Shields *v.* Shields.

————— •·• —————

JAMES B. SHIELDS, appellant, *vs.* ELIZABETH SHIELDS, Executrix &c., respondent.

In every case, when a complaint is made to a surrogate, under the provisions of the Revised Statutes, that the circumstances of a person appointed executor are so "*precarious*" as not to afford adequate security for his due administration of the estate, (2 *R. S.* 72, § 18,) it must depend upon its own peculiar features and circumstances; of which the surrogate is the appropriate judge.

The circumstances of an executor are *precarious*, within the meaning and intent of the statute, only when his character and conduct present such evidence of improvidence or recklessness in the management of the trust estate, or of his own, as in the opinion of prudent and discreet men endangers its security.

Shields *v.* Shields.

Though bankruptcy might furnish a reason for superseding an executor, poverty does not.

The selection of a trustee is an indication of the highest degree of personal confidence; and character, rather than pecuniary responsibility, controls the selection. And it would be arbitrary, as well as unjust, for a court to adjudge that a person of sufficient capacity to make a will had not enough to select a trustee to manage the estate as executor.

THIS is an appeal from the order of the surrogate of Washington county dismissing the plaintiff's complaint. The plaintiff, by his complaint, asked for an order to supersede the defendant, and to enjoin her from further acting as executrix of the will of her deceased husband; and for such other order in the case as should tend to the security and due administration of the said estate. The complaint alleged the making and due proof of the will of the deceased, the issuing of letters testamentary to the defendant as sole executrix, an interest of the plaintiff in the estate of the deceased; and alleged that the circumstances of the defendant were so precarious as not to afford adequate security for her administration. That the estate was of about the value of $7000, of which the use of about $6000 was given to the defendant for life, with full power to the defendant of sale and disposition; and that she, the defendant, was worth but a small sum, except what was so given her in said will.

Upon filing this complaint, verified, the surrogate issued a citation to the defendant to show cause why she should not be superseded. Parties appeared by their proctors. The defendant moved to set aside the order as improvidently granted and unauthorized, and raised the point that the objections should have been filed before the letters were granted. The surrogate denied this motion, and heard the testimony. The defendant was sworn on the part of the plaintiff, and testified that she owned no real estate in her own name, nor any personal property, except her husband's property, and never had any since

her marriage; she had some money when she was married, that went into her husband's hands. The defendant was then sworn on her own behalf, and testified that she was acquainted with the real estate of her father, (the testator,) which was worth about $5000. Did not know whether it was mortgaged, or whether the testator was in debt. One Lendrum was then sworn on the part of the defendant executrix, and testified that the testator called upon him to write the will, and spoke of his wife as an excellent manager, and as having helped to make the property, and that he had perfect confidence in her management. There was no other material evidence, except the will itself. The case was argued and submitted to the surrogate, who dismissed the complaint, and made an order to that effect, and gave the following as the grounds of his decision :

1. There is no proof of anything wrong on the part of the executrix, or that she is insolvent.

2. Nor that she is about to dispose of the real estate, or has shown any intention to do so.

3. Her husband expressed full confidence in her, when he made his will, and made her the sole executrix of the same. There is no reason to believe that she will violate her oath of office.

4. Should any danger to any part of the estate arise, the complainant can then apply for additional security.

From this order there was an appeal to this court.

*Boies & Thomas,* for the plaintiff.

*M. Fairchild,* for the defendant.

*By the Court,* POTTER, J.   Letters testamentary may be, and should be, granted by the surrogate at any time after the will shall be proved, to the person or persons named in the will as executors, unless an affidavit is made and filed by the widow, legatee, next of kin, or creditor of the

Shields *v.* Shields.

testator, setting forth that such person intends to file objections against the granting of such letters, and stating that he is advised and believes that there are just and substantial objections to the granting of such letters to the persons named as such in the will.  When such an affidavit is filed, then the duty of the surrogate is prescribed.  In this case, no such proceeding was had; no such affidavit was filed.  The duty of the surrogate was plain; he pursued it and issued the letters.  There are certain objections at law, which, if they exist when the will is proved, the surrogate will, as it will be his duty to do, refuse to grant letters testamentary, on the ground of incompetency of the person named, and will issue letters of administration with the will annexed.  The statute defines these objections of incompetence to persons as follows:

" 1st. Incapable in law of making contracts, (except married women.)   2d. Under the age of twenty-one years. 3d. An alien, not being an inhabitant of this State. 4th. Who shall have been convicted of an infamous crime. 5th. Who, upon due proof, shall be adjudged incompetent by the surrogate to execute the duties of such trust, by reason of drunkenness, *improvidence,* or want of understanding."   (2 *R. S.* 69, § 3.)

We are to assume, then, that none of these reasons, not even that of *improvidence,* existed against the defendant at the time of proving the will and the issuing of letters testamentary.   If *after* such letters have been granted by the surrogate, such executor becomes incompetent by law, for any of the aforesaid reasons, or that the circumstances of such executor *are so precarious* as not to afford adequate security for the administration of the said estate, it is the duty of the surrogate to inquire into the complaint.   (2 *R. S.* 72, § 18.)

This precarious condition of the executor is the basis

upon which the plaintiff moves in this case, and it is this question of precariousness which the surrogate was called upon to decide. It was not incompetence; no such charge was made. There was no charge of improvidence accruing since the issuing of the letters; no proof of indiscretion in the management of the estate; no want of exercise of a reasonable judgment; no dishonesty, not even insolvency; she had made no attempt to dispose of the estate, or expressed an intent to do so. What, then, is this precariousness upon which this proceeding is based? It was not even her poverty. She had a reasonable support for life in the property itself. Though bankruptcy might furnish a reason, poverty does not. The *trust* of this estate was committed to her; of that, a part of which had once been her own, and intrusted by one who, better than any other, knew her integrity and her capacity, and who had declared her to be an excellent manager; who had helped him to acquire the estate; and in whom he had perfect confidence. If the mere chance that property committed to a trustee might be lost, would render his circumstances precarious, there is not an executor occupying that place that could not be removed. The experience of the world, if appealed to, would demonstrate the truth, that it is not those who have most means in possession that are found to be the safest and best trustees. They are more generally, and doubtless more appropriately, selected from those possessing integrity of character, habits of economy and industry, and having moderate estates, acquired by honest industry. Such persons, it may be said, are in circumstances less precarious than many who possess far greater wealth. The selection of a trustee is the indication of the highest degree of personal confidence; and character, rather than pecuniary responsibility, controls the selection. It would be arbitrary, as well as unjust, for a court to adjudge that a person of sufficient capacity

to make a will, had not sufficient to select a trustee to manage his estate as executor.

If such were the views of the surrogate in this case, in the absence of all adjudication upon, or judicial construction of the meaning and intent of the term *precarious,* as employed in this statute, then his decision has a basis of good sense to support it. Statutes must have reasonable construction. A construction that would give to the term *precarious,* as used in this statute, the literal construction contended for, would be impracticable and mischievous. *Webster* illustrates the meaning of " precarious" by a quotation from Rogers, who says : " Temporal prosperity is *precarious.*" This applies to the case of every trustee. With this illustration for a true definition of this term, the circumstances of every executor are *precarious,* and he can be removed for that reason. I think in every case, when such a complaint is made, it must depend upon its own peculiar features and circumstances ; of which the surrogate is the appropriate judge. It seems to me that the circumstances of an executor are precarious only, within the meaning and intent of the statute, when his conduct and character present such evidence of improvidence or recklessness in the management of the trust estate, or of his own, as in the opinion of prudent and discreet men, endangers its security. There is, it seems to me, no such evidence in this case ; nor, in my opinion, is there any evidence that renders the circumstances of the defendant, as executrix, precarious within the meaning and intent of this statute. It was a remark of Lord Hardwicke, " that a *trust* is an office necessary in the concerns of life, between man and man, and which, if faithfully discharged, is attended with no small degree of trouble and anxiety, and it is an act of great kindness in any one to accept it. If there is no *mala fides*—nothing willful in the conduct of the trustee—the court should regard all his acts with a favorable eye."

I have not found in the decision of the surrogate any error that demands the reversal of the judgment. It should be affirmed, with costs.

Judgment affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, September 6, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]