In the Matter of the Estate of WILLIAM F. O'BRIEN, Deceased.

(*Surrogate's Court, Rensselaer County, Filed January* 20, 1892.)

EXECUTORS AND ADMINISTRATORS—WHEN WILL BE REQUIRED TO GIVE BOND.
    Where it appears that subsequent to the making of a will the relations existing between the testator and the persons named as executors

became changed so as to warrant a conclusion that they would not have been selected as executors at a subsequent date, and that the testator had an intention of changing them, the rule that they occupy that position by reason of the personal confidence and trust of the testator in them fails, and the court may consider their pecuniary circumstances and qualifications; and where it appears that the estate is large, and the executors have little or no pecuniary means, and their business habits and experience have not qualified them for the management of important pecuniary responsibilities, may require security for the faithful performance of their duties.

This is an application by Ellen O'Brien, Francis O'Brien and Mary Kate O'Brien, three of the five children of William F. O'Brien, deceased, for the revocation of letters testamentary issued to Thomas O'Brien and Charles McCarthy, executors under the will of said deceased. The application is resisted by the executors. The will was admitted to probate on the 15th day of August last, and said executors qualified and letters testamentary were duly issued to them.

This application was made September 25, 1891, upon the ground principally that the executors' circumstances were such that they did not afford adequate security for the due administration of the estate.

The matter was referred to Thomas S. Fagan, as referee, to take the proofs of the respective parties and report the same to the court with his findings thereon.

Myers & Norton, for petitioners; William J. Ludden and L. E. Griffith, for executors.

LANSING, S.—I have carefully read the testimony produced before the referee, together with the briefs of counsel and the findings of the referee. I do not deem it necessary to enter into any extended examination of the facts in this case or of the law pertaining to applications of this character. Each case must depend upon its own circumstances, and but little aid is afforded by the adjudged cases, since no case can be found which is exactly parallel with the present.

It is sufficient to say in general, that these executors are

employes in large business establishments and have been so employed continuously for more than twenty years past at remunerative salaries. Their honesty has not been assailed or questioned in this examination. Substantially the sole question (outside of the question of the personal relations which existed between the deceased and said executors subsequent to the execution of his will) has been the question of the sufficiency of the pecuniary responsibility of the executors to afford adequate security for the due administration of the estate.

The referee has found from the evidence that the executor Charles McCarthy, although in receipt of a comparatively large salary for a great many years, is pecuniarily irresponsible, being the owner of neither personal or real property of any description. That the executor Thomas O'Brien is a person of but little pecuniary responsibility, depending altogether upon the value of a piece of real estate in the city of Troy, his only property, which is assessed at about $5,000 and mortgaged for about $4,000.

Section 2685, Code of Civil Procedure, provides that "In either of the following cases, a creditor or person interested in the estate of a decedent may present to the Surrogate's Court from which letters are issued to an executor or administrator a written petition, duly verified, praying for a decree revoking these letters, and that the executor or administrator may be cited to show cause why a decree should not be made accordingly."

Subdivision 5. "In the case of an executor, where his circumstances are such that they do not afford adequate security to the creditors or persons interested for the due administration of the estate."

Section 2687 provides: "Upon the return of the citation issued as prescribed in the last section, if these objections or any of them are established to the satisfaction of the surrogate, he must make a decree revoking the letters issued to the persons complained of; but the surrogate may in his discretion dismiss the proceedings upon such terms as to costs as justice requires, and may allow the letters to remain unrevoked in either of the

following cases: (Third), where the case is within *subdivision 5 of section* 2685, if the executor gives within a reasonable time, not exceeding five days, a bond as prescribed in article 1 of this title."

Subdivision 5 of section 2685 (or section 18, page 72, 2 Rev. St.), from which said section was derived, has been repeatedly before the court for construction. It is well settled that the choice of an executor by a testator is not restricted to persons of large means, or those whose estates are as great or greater than those proposed to be committed to them. On the contrary, the law permits a person to select from among his friends persons of approved honesty and business qualifications without regard specially to their pecuniary responsibility. Holmes v. Cock, 2 Barb. Ch. 426; Shields v. Shields, 60 Barb. 56; Grubb v. Hamilton, 2 Dem. 414.

The rule is based on the ground that a testator has the same right to exercise his choice in the selection of a person to manage his estate after his death that he has to select one to represent him during his life. The courts will ordinarily respect his wishes in the selection of an executor, notwithstanding it is the settled policy of the law in every case (save where executors, trustees and guardians are appointed by will) to require that the persons appointed to such offices should be persons possessing honesty, integrity and business qualifications and in addition thereto that they should furnish two good and sufficient sureties in double the amount of the property committed to their charge for the faithful performance of their duties. This wide difference, as to security and pecuniary qualification, recognized in the law, between executors and trustees appointed by last wills and those appointed by the court, rests almost entirely for its support upon the presumption that the appointment of executors grows out of personal confidence and trust rather than upon the pecuniary qualification of the executor. Notwithstanding this rule, however, the statute provides, and the courts hold, that however willing the testator may have been to entrust his affairs to a clearly improper person, named as executor in

his will, yet that those interested in the estate at his death are not obliged to abide by his choice.

In this case the will was made some ten years before the death of the testator, and the circumstances are such as to warrant the conclusion that the deceased would not have selected one and probably neither of them as executors had he made his will at or about the time of his death, for it appears that the testator by a memorandum upon his will, made a year or two after it bears date, intended to substitute some other person for Mr. Thomas O'Brien as executor in his will; and although that intent was not effectuated by reason of the will not having been formally re-executed, it sufficiently appears in connection with the circumstances under which it was made that he did *not* at that time desire to have Mr. O'Brien continued as executor under his will; and although their relations subsequently became friendly, the deceased did not change his will in that respect.

As to the other executor, Mr. McCarthy, the relations of the deceased with him for the last few years prior to his death were not such as to warrant the conclusion that he would have selected him as executor, had he made his will shortly prior to his death.

The matter then comes to this: Although the executors have received a valid appointment under the will, yet they are measurably deprived of the benefit of the rule, that they occupy that position by reason of the personal confidence and trust of the testator in them, which the law assumes to stand in the place of pecuniary responsibility. This fact, which is established, must relegate them to the position of those liable under the statute of having their pecuniary qualification to manage estates inquired into in a manner similar to that of persons seeking such appointment from the court. In other words, the reason for the rule having failed, the rule itself falls. The executors are thus deprived of the benefit of the presumption, that they are qualified for their positions, arising from the fact that they have received their appointment from the testator. It seems to me, therefore, that without the slightest reflection upon the

character of the executors, I should consider whether the circumstances of the executors, or either of them, in connection with their business methods and habits, are such as to furnish adequate security for the due administration of the estate.

My conclusion upon the whole is, that as the personal estate is very considerable, amounting to something like fifteen to twenty thousand dollars, and there is also connected with the will a trust of considerable importance, extending through the lifetime of one of the children of deceased, and as the said Thomas O'Brien and Charles McCarthy are possessed of little or no means, and their business habits and experience have not qualified them for the management of important pecuniary responsibilities, that they should give a bond in the usual form, with two good and sufficient sureties for the faithful performance of the duty of their office of executor and trustee in the penal sum of $30,000, unless it should be made to appear that the personal property exceeds $15,000, in which case the bond shall be double the amount of the personal estate; and as the costs and expenses of this proceeding have largely been the result of the unwillingness of the executors to furnish a bond as they were authorized to do under section 2686 of the Code, upon the presentation of the petition, I think they should personally pay the disbursements of this proceeding, amounting to the sum of $101.40, and in case of their failure to give such bond and pay such disbursements within five days after service of an order to that effect upon them, an order may be entered revoking the letters issued to them, or the one so failing to comply with the conditions above prescribed.