### Wood and others *vs.* Wood, executor, &c.

Under the revised statutes, if the circumstances of the executor are such as not to afford adequate security for the faithful discharge of his trust, and the objection is made by a person interested in the estate, the surrogate is bound to require security from the executor, although the testator, at the time of making his will, was aware that the executor was irresponsible.

Where the executor is about to remove from the state, the surrogate must require security from him, although the testator, by his will, directed the executor to remove with the property bequeathed, into another state.

This was an appeal from an order of the surrogate of Al- January 7. bany county, granting letters testamentary to J. B. Wood, the respondent, as executor of S. S. Wood, deceased, without requiring security from him as such executor. The testator died in the spring of 1833, leaving a widow and three infant children ; the eldest of which children was six years of age. He left property of the value of about $18,000 ; most if not all of which consisted of money, stocks and other personal estate. His debts amounted to about the sum of $3000. By his will, which was made a few months before his death, he appointed his brother J. B. Wood, the respondent, his executor, and the guardian of his infant children. The testator also gave to his executor all his estate, in trust for the purposes of his will. And in his will he directed his executor to convert all the estate into money ; and, after paying his, the testator's debts, and the expense of transporting his widow and children to the state of Ohio, he directed the executor to invest two thirds of the residue, in that state, for the benefit of the children, and of the widow, during her widowhood. The other third of the estate, and also the income of the children's share, during their minority, was given to the executor, to enable him to support and educate them. The executor was a single man, without any visible property. But, upon his examination before the surrogate, he stated that, in addition to the interest he expected to derive under this will, he had a claim against his father, of about $1000, for services rendered after he arrived at the age of 21. The executor also stated that it

was his intention to remove to Ohio, and there to invest the estate of the testator, as directed by the will.

*A. Tabor,* for the appellants. I grant that the testator might have given his property to whomsoever he pleased, or perhaps have directed it to be destroyed, or used for the annoyance instead of the benefit of his family, without being controlled by the municipal law. But since he has directed a part of it to be given to his wife and children, the municipal law requires the courts to take such security as shall insure its being so applied; and that without any reference to the intention of the testator as to security. The law only, not natural right, confers on the testator the power of disposing of his property after death. (2 *Bl. Com.* 10, 11.) The same law requires the surrogate to take security from an incompetent executor for the benefit of the living, without reference to the intention of the testator. The testimony objected to, but admitted by the surrogate, was inadmissible. (*Gray* v. *Goodrich,* 7 *John. Rep.* 95. *Jackson* v. *Kniffen,* 2 *Id.* 31. *Wilson* v. *Boerem,* 15 *Id.* 286.) The question was not what the testator thought of the competency and responsibility of the executor, but what the fact was—of which fact his declarations were not evidence; and the declarations of the testator are not competent evidence even of what he thought on this subject. The surrogate did not sufficiently inquire into the objection to the competency of the executor, and ascertain whether his circumstances afforded adequate security to the creditors, &c. (2 *R. S.* 70, § 6.) If further evidence is necessary to protect the rights of the infants, it is prayed for in the petition of appeal, and this court will now order it to be taken. (*Scribner* v. *Williams,* 1 *Paige,* 550.) Before the surrogate there was affirmative evidence that the circumstances of the executor did not furnish adequate security to the creditors. (2 *R. S.* 70, § 6, above cited, and *p.* 61, § 28.) The design of removing out of the state to reside, is of itself a circumstance which should have induced the surrogate to require security, under the manifest spirit and intent of the statute. (2 *R. S.* 70, § 7. *Id.* 72, § 18, 19, 20, 21.) The mother is not oblig-

1834.

Wood
v.
Wood.

ed to leave this state ; and the father, if living, would have no right to leave her here and take her children to Ohio. He would be controlled in such an attempt, by the courts. (*Commonwealth* v. *Addecks*, 5 *Binney's Rep.* 520. *United States* v. *Green*, 3 *Mason's Rep.* 482. *De Manneville* v. *De Manneville*, 10 *Vesey's Rep.* 51. *State* v. *Smith*, 6 *Greenleaf's Rep.* 462. *Matter of Waldron*, 13 *John. Rep.* 418. *Matter of Wollstoncraft*, 4 *John. Ch. Rep.* 80. *Wellesley* v. *Duke of Beaufort*, 2 *Russ. Rep.* 1. *Lyons* v. *Blenkin*, 1 *Jacob*, 245, *and cases there cited.*) A testamentary guardian is as much under the control of this court, though appointed in pursuance of a statute, as the father. (*The Duke of Beaufort* v. *Berty*, 1 *P. Wms.* 703.) In England, the court of chancery will not suffer a ward to be taken out of its jurisdiction by the guardian, even into Scotland. (*Mountstuart* v. *Mountstuart*, 6 *Vesey's Rep.* 362. 10 *Id.* 51.) A limitation too extensive in its creation is wholly void. (2 *Vesey & Beames*, 61, 54. *Cox's Ch. Cas.* 324.) The counsel also cited 1 *Sim. & Stu.* 69, 1 *Swanst.* 566, 1 *Jac. & Walk.* 583, 4 *Mad. Ch. Rep.* 484, and 1 *Russell*, 416.

*S. Cheever*, for the respondent. It should be the object of the court to carry into effect the intention of the testator; not to defeat it. The testator had a right to give his property to whom he pleased, and upon such conditions as he pleased. The testator selected his brother, in whose integrity and business capacity he had confidence, to execute his will. The executor has an interest in one third of the property. When that is taken out, he is worth $6000, and has $10,000 to administer, which he is to invest immediately for the children, in their name, and in real estate, which is always regarded by this court as a favorable investment. The executor says he is ready to proceed to Ohio and execute the will according to its provisions. Did he intend otherwise, it would be cause for this court to interfere. This will was recently made. No change in the circumstances or character of the executor, since making it, is pretended. Should the court require bail, and the executor should not give it, is the court certain that any one will be found ready to take administration *cum testamento annexo?* and should no such one be found, must not the

chancellor make a new will ? The fact that the testator directed his property to be taken out of the state, is a reason why bail should not be required, because it increases the difficulty of procuring it ; and if not procured, the objects of the will will be defeated. The property is not to be taken beyond the reach nor beyond the protection of laws. The testator had a right to designate the state under whose laws he was willing to trust his property and his children, and this court should not grant a ne exeat to prevent it.

The statute authorizing the surrogate to require bail, was intended for the safety of creditors, and of legatees in extreme cases. Here the creditors would have been paid long ago, if letters testamentary had been granted ; and will be immediately, when it is done. There is no pretence of alarm on their account ; and where the testator has imposed no terms on the executor, as to legatees, the court should not. (2 *R. S.* 70, § 6. *Revisors' Notes, pt. 2, ch. 6, tit. 2, § 6. Peer Williams,* 119, 218. 3 *Salkeld,* 162. 1 *Id.* 36, 299. 1 *W. Bl. Rep.* 456. 3 *Atk.* 566. 2 *Id.* 126. *Strange,* 857. *Fitzg.* 125, 365.)

THE CHANCELLOR. The only question which is properly before me on this appeal, is, whether the surrogate was right in granting letters testamentary to the respondent, without requiring security for the faithful execution of his trust. If the will is invalid, from a want of capacity in the testator to make it, or if the proof of the will was not properly made before the surrogate of Albany, on the ground of a different residence of the testator at the time of his death, the remedy of the widow and next of kin was by an appeal to the circuit judge. And if the testamentary guardian, improperly or without any sufficient cause, attempts to remove these children out of the jurisdiction of this court, or deprives them of the nurture and care of their mother at their present tender ages, her application must be made directly to the chancellor ; and not by way of appeal from the decision of a surrogate.

Previous to the revised statutes, the surrogate was obliged to grant letters testamentary to the executor named by the testator, although he was known to be insolvent. (*The King* v. *Sir Richard Raines, Carthew,* 457.) But where the execu-

tor became insolvent after the making of the will, although the creditors and legatees of the testator could obtain no relief in the ecclesiastical court, the court of chancery sometimes interfered to protect the estate from waste, or loss, by such insolvency. (*Utterson* v. *Mair*, 4 *Bro. C. C.* 270. 2 *Vesey, jun.* 95, *S. C.*) But poverty alone, if known to the testator, was not of itself sufficient to authorize the court of chancery to take the administration out of the hands of the executor selected by him. (*Howard* v. *Papera*, 1 *Mad. Rep.* 142.)

The revised statutes, however, have introduced a new principle into our testamentary law. Any person interested in the estate of the testator may now object to the granting letters testamentary to the executor named in the will, on the ground that his circumstances are such as not to afford adequate security to the creditors, legatees, &c. for the due administration of the estate. And if the surrogate is satisfied of the validity of the objection, he may require security as in cases of intestacy. Where the executor is a non-resident of the state, he must also give the like security. (2 *R. S.* 70, § 6, 7.) Under these provisions of the revised statutes, it is not material to inquire whether the testator was aware of the want of responsibility in the executor at the time of making the will. For if the testator has been so improvident as to commit the administration of his estate to one whose cirumstances are such as not to afford adequate security for the faithful discharge of his trust, the court must interfere for the protection of the estate against the effects of such improvidence. The declarations of the testator, as proved by the gentleman who drew the will in this case, were therefore wholly irrelevant to the inquiry which was pending before the surrogate. They merely proved that the testator was willing to trust the executor with his estate ; that, however, was previously shown by the will itself, which named him as the executor, without requiring him to give any security. From the evidence, as to the standing and circumstances of this executor, I think the surrogate erred in supposing those circumstances were such as to afford adequate security for the faithful administration of this estate ; especially as the trust, as to most of the property, is to continue for nearly

twenty years. And in the mean time the whole property, as well as the person of the executor, is to be removed beyond the jurisdiction of this state. The third of the estate which is given to the executor, for the purpose of enabling him to support and educate the children, should not be taken into account in ascertaining the value of the executor's property in reference to this trust. The whole of it may be required for the specific object for which it was given. And one of the reasons for requiring bonds of the executor, is to secure the faithful application of that third of the estate to the support and education of the children, if it should be necessary for their support. All that the executor has then, which can be called his property, is an unliquidated, and probably an unadmitted demand, of several years standing, against his father, for his services while he remained at home. And there is nothing in the testimony to show whether this claim, even if it is a legal one, can or cannot be collected of the father.

There is, however, another provision of the revised statutes which shows the impropriety of granting letters testamentary without security, in this case, more clearly still. By the 20th sect. of the title of the revised statutes before referred to, (2 *R. S.* 72,) it is made the imperative duty of the surrogate to require security from an executor, upon proof that he has removed, or is about to remove from the state. And if letters testamentary had been granted in this case, without security, the widow and children might have immediately applied to the surrogate to compel the executor to give security ; as he admitted, on his examination, that he was about to remove to the state of Ohio. No good, therefore, could have resulted from a grant of letters testamentary, in conformity with the decision of the surrogate. But the executor, in the mean time, and before any citation could have been served upon him, might have departed with the property beyond the jurisdiction and control of the surrogate ; and thus might have evaded this salutary provision of the statute.

The decree of the surrogate, directing letters testamentary to issue without security, must therefore be reversed, with costs to the appellants, to be paid out of the estate of the testator. A transcript of the decision, or decretal order to be en-

tered on this appeal, must be remitted to the surrogate ; with directions to him to enter an order, in conformity with the decision of this court, requiring the executor to give a bond with sureties, as is required by law of administrators in cases of intestacy, before such executor shall be entitled to letters testamentary on the estate of the decedent.