COTTERELL vs. BROCK.

*In the matter of the Estate of* JOHN BROCK, *alias* JOHN ILLSLEY FLOWERS, *deceased.*

ANY person interested in the estate of a Testator, may apply to the Surrogate for an order, requiring the executor to show cause why he should not be superseded, on the ground that his circumstances are so precarious, as not to afford adequate security for the due administration of the estate.

An apparent interest, positively sworn to, will be sufficient to justify the order; and the validity of the claim will not be tried on such an application.

A mere allegation of irresponsibility, is not enough to compel an executor to give security; but if the allegation be denied, the charges must be proved.

In determining the question, whether or not the executor is in such precarious circumstances as to make it proper to require security, the proportion of the estate belonging to the executor by the provisions of the will, may be taken into consideration, in estimating the executor's pecuniary means,— regard also being had to the extent of the claims existing against the estate.

JONATHAN EDWARDS, *for Petitioner.*
H. M. WESTERN, *for Executrix.*

THE SURROGATE. Thomas Cotterell, of the city of London, filed his petition for the removal of Rebecca Brock, the executrix, on the ground that her circumstances are so precarious, as not to afford adequate security for the due administration of the estate, and that there is just reason to apprehend she is about to remove from the State. On the return of the citation, the executrix appeared and presented affidavits in reply to the allegations of the petitioner, and without taking any testimony, except a letter of the deceased, the case was submitted upon the papers, after argument.

The petition and affidavits annexed allege, that Cotterell is a creditor of the estate, to an amount exceeding twenty thousand dollars; that the circumstances of the executrix are precarious,—that she neglected to file an inventory till

required by the Surrogate on 17th November, 1849,—that the inventory amounts to but $20,831 46, whereas, on the contrary, it is charged that assets to a large amount have been omitted, and that the executrix, since the death of the testator, has invested in her own name on bond and mortgage, $26,000, and has also paid William Flowers, the father of the testator, $5250,—that the executrix is an alien, and has never been naturalized,—that she is the sole legatee of the whole estate left by the deceased, which consists exclusively of personal property, and has been reduced by her into possession,—that she is possessed of no property whatever, except that derived from the estate of her husband,—that there are no other creditors of the estate,—that the executrix has no family or business connections binding her to a residence here, and the petitioner is apprehensive the assets will be removed out of the State, or be secreted, or misapplied. The petition is verified by the attorney in fact of Mr. Cotterell, upon information and belief, and some of the statements in the affidavit annexed, are positively affirmed by Mr. Edwards.

Mrs. Brock, in reply, denies the claim of Cotterell, and avers that if any debt ever existed, it could not have exceeded a few hundred pounds, and is now barred by the statute of limitations. She states that she is a permanent resident of New-York, has lived here twenty years, has a sister and nephew living here, and also an adopted child born here, whom she is educating as her daughter,—that she has not, and never had any intention of leaving the city,—that she was naturalized in the year 1840,—that she has incurred no debts or liabilities,—that at the death of her husband, she had three or four thousand-dollars of her own, which, with the proceeds of the sale of her wardrobe, trinkets, jewelry, &c., forms the excess, beyond the amount of the inventory, of the funds invested and paid by her,—and she denies any concealment of the property of the testator.

These are the principal facts of the case, except such as

bear upon the claim advanced by Cotterell, to which I will now advert, as they raise the first point necessary to be determined.

Has the petitioner established such an interest as entitles him to make this application ? The letter of the testator, dated July 31, 1830, substantially acknowledges an indebtedness of £1000 at that time. It is contended on one side, that the statute never began to run against the debt, because no demand was made, and also on the ground that the testator never lived within this State in an open and public manner, but on the contrary, was only known here under an assumed name. On the other hand, the executrix asserts in positive terms, that the claimant was well acquainted with the residence of the testator, and corresponded with him. It seems to me unnecessary to enter upon the consideration of this point, for the debt being proved *prima facie* to the extent of £1000, I am of opinion that the true construction of the section of the statute under which this application is made, does not require any thing more. (2 *R. S.*, *p.* 136, § 19.) The persons authorized to apply to the Surrogate for the benefit of the provision, are " all those interested in the estate of the deceased." The establishment of a claim in the first instance, showing an apparent interest, appears to me to be all that may be reasonably considered as requisite to justify the institution of this proceeding. The creditor does not seek for payment, but shows he has a demand, which if uncontradicted, may be recovered in another Court. He thus becomes interested in having the estate preserved safely in the hands of a responsible executor. Were any other rule to be adopted, the investigation as to the propriety of requiring security, would be encumbered by going through the entire trial of the claim. In the Ecclesiastical Courts, on an application for an account, the validity of the demand will not be tried, nor the statute of limitations be allowed as a bar. (1 *Lord Raymond*, 232 ; *Millington* vs. *Sorsby*, 1 *Lee's Cases*, 525 ; *Smith* vs. *Pryce*, *Ibid.*,

569; *Philipson* vs. *Harvey*, 2 *Id.*, 344; *Gratacap* vs. *Phyfe*, 1 *Barb. Ch. R.*, 486.) As in cases of bail at Common Law, it is a wiser and more salutary rule to treat a demand positively sworn to, and *prima facie* valid, as establishing a sufficient interest to authorize the intervention of the Court in requiring adequate security.

Supposing the demand of Cotterell to be a valid and subsisting debt, there is doubt for what period of time it would bear interest, whether from the time of a demand, or for a longer period. Overlooking the circumstance that the claim is not sworn to by Cotterell, and taking the evidence introduced in supply of that defect, we then have a creditor to the extent of $5000 and interest, complaining that the fund is in danger.

There are some allegations in the papers of the petitioner, suggestive of the idea that the executrix is about to remove from the State, and conceal or misapply the property. These charges she explicitly denies, and it is impossible for me to reject her denial, on the faith of vague and uncertain conjectures of the adverse party, unsupported by proof. An effort has also been made to impeach the inventory, and the fairness of the executrix in her dealings with the estate. She explicitly declares that the excess over the amount of the inventory is her own individual property, and explains her transactions in closing the business of the deceased, without any evidence being produced to contradict her. As it is conceded on all hands that the executrix is the sole legatee,—that the next of kin who had a right to contest the will, have released any claim they might have had,—that the period of a year within which allegations might have been filed against the will has elapsed, and that no other claim, except that of Cotterell, exists against the estate, it seems to me quite immaterial whether or not the excess over the amount of the inventory consists of the individual property of the executrix. In any event, her statement on that point is very positive, and I can perceive no motive why she should

have concealed the assets of the testator, or have foolishly sacrificed his property, when it all in fact belongs to her. Confessedly, she is now in possession of $26,000, invested in permanent securities on bond and mortgage,—continues to live in this city, where she has resided for twenty years, and has ties quite sufficient under ordinary circumstances to bind her here.

A mere allegation of irresponsibility is not sufficient to compel an executor to give bonds, but when the allegation is denied upon oath, the petitioner should proceed to prove the charge, and if he fails to do so, the Surrogate cannot require the executor to prove his responsibility before any doubt is raised by proof, but must dismiss the petition. (*Colegrove* vs. *Horton*, 11 *Paige*, 261.) I certainly do not mean to limit the term " precarious circumstances " to the present pecuniary condition of an executor, without regard to such facts as tend to show the uncertainty of the continuance of that condition. But under the most liberal view of the statute, the main point to be ascertained is, whether the executor's pecuniary responsibility, his habits, and business, and other facts bearing upon the permanence and certainty of his circumstances, all considered, it is doubtful whether the trust fund will be safe in his hands to be administered as directed by the will. (*Mandeville* vs. *Mandeville*, 8 *Paige*, 477.) It would be equally difficult and improper, to attempt to lay down any fixed rule in regard to the necessary pecuniary condition of an executor. Some men of small estates, but of prudent and careful habits, and retired from the hazards of business, might be more reliable trustees than others of far greater means, engaged in dangerous pursuits, or speculative enterprises. Each case must be regulated by its own peculiar circumstances. The Legislature certainly never intended that an executor should be as wealthy as his testator, or else be liable to removal, and I should be loth even to intimate any scale of proportion between the property of the executor, and the

fund intrusted to him, as a criterion for action under this statute.

Is then this executrix in such precarious circumstances as to require the interposition of the Surrogate? I think not. The petitioner has not proved any fact showing her insolvency, the onus of which affirmative, according to the ruling of the Chancellor, rested upon him. On the contrary, the executrix asserts positively, that the excess of her investments over the amount of the inventory, constitutes her own property. But besides this, it cannot justly be disregarded, that the whole estate of the testator belongs to her in her own right as sole legatee,—that there are no claims except Cotterell's, as he himself declares, against the estate, and that she has now invested on bond and mortgage, $26,000, an amount exceeding the entire claim stated in the petition, and five times the sum proved *prima facie* before me as an original debt. Of course, it is impossible under such a state of facts, to say that she is in precarious circumstances; and if the interest of the executrix under the will, can be taken into consideration in judging of her pecuniary responsbility, it seems to me there is an end of any doubt as to the merits of this application.

Now where a clear vested interest in a part or the whole of the fund is shown to exist in the trustee, it is inequitable to require security for the faithful administration of so much of the estate as passes to him. (*Holmes* vs. *Cock,* 2 *Barbour's Ch. R.,* 427; *Wood* vs. *Wood,* 4 *Paige,* 304.) It has been ruled that a contingent interest formed no basis for estimating the responsibility of the executor, on the ground, however, that it was contingent and therefore uncertain—a reason which by its very statement, admits the general principle, that if it were not a contingent, but a vested interest, it would be a fair element in determining the responsibility of the executor. No man ought to be compelled to give security for that which belongs to him alone, without pretence of adverse claim.

That is a proposition beyond impeachment. Here the whole estate belongs to Mrs. Brock, subject only to such claim as Cotterell may establish. He would be the only person interested in the bond, if directed to be given; if he prosecute at law, he sues a party, by his own showing, worth twenty-six thousand dollars invested on bond and mortgage,—an amount abundantly sufficient to meet any judgment he may recover, and against which, as he himself declares, no other claim exists. To require the executrix and sole legatee of the deceased to give bonds in such a case, would be unreasonable and grievous. The petition must therefore be dismissed.