NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.— February, 1880.

## FREEMAN *v.* KELLOGG.

*In the matter of the estate of* LORRAIN FREEMAN, *deceased.*

The term "improvidence," as employed in the statute (sub. 5, § 3, 3 *R. S.,* 73 [6 ed.]), authorizing the removal of an executor, refers to habits of mind and conduct which become a part of the man, and render him generally unfit for the trust in question.

Executors, who are without pecuniary responsibility, may be compelled to give security, under the statute (§ 19, 3 *R. S.,* 75 [6 ed.])* authorizing such a proceeding, where the circumstances of the executors are so precarious as not to afford adequate security for their due administration of the estate, although the testator was aware of their impecunious condition. (Shields *v.* Shields, 60 *Barb.*. 56, disapproved.)

---

* See *Code Civil Procedure,* §§ 2685, 2687.

Where all the adult beneficiaries and the general guardian of infant bene-
ficiaries, with knowledge of the insolvent condition of the executors,
consented to their appointment and to their acting as such, without
security,—*Held,* that all the parties, except the general guardian, who
had no power to enter into such an agreement, thereby waived the
right to require the executors to give security because of their insolv-
ency, and that the executors would be required to give security only
for the shares of the infant beneficiaries.

MOTION on the part of Mary E. Freeman, as general
guardian of the infant daughter of decedent, Laura R.
Freeman, and one of the residuary legatees under his
will, to remove the persons appointed executors, David
M. Kellogg, Edgar Williams, and Edward M. Freeman,
on the ground that they have become incompetent by
law to serve, and that their circumstances are so precari-
ous as not to afford adequate security for their due ad-
ministration.

The petition set forth the proceedings of the executors
as they appeared upon the accounting referred to in the
preceding case (Freeman *v.* Freeman) ; it alleged the
failure of the executors to collect the Kellogg note ; the
insolvency of Kellogg and Williams ; the withdrawal of
commissions by the executors, $2,231 by Freeman, $2,600
by Kellogg, $2,143 by Williams; the loan of $4,000 to
Amy H. Kellogg on New Jersey property ; the practice
of Williams to sign checks in blank to be used by the
other executors ; that the bank account of the estate was
kept only in the name of Kellogg and Williams. The
petition further set forth the report of the referee as to
the amount chargeable against the executors, as fol-
lows :

The executors are chargeable with the amount
   of the inventory, increase thereon, and in-
   terest, to amount of $674.53, on sums appro-
   priated as commissions,  .   .   .   . $229,220.89
And are to be credited with expenses, debts
   paid, legacies, investments, and certain dis-
   allowances, &c., .   .   .   .   .   . 219,016.92

Balance of cash in their lands   .   : $10,203.97

To this petition the executors, Kellogg and Williams, answer: That they refer to the will and codicil; that the testator died on September 22, 1875; that all his children then living, except the said two infant children, were adult children by a first wife; that after his death, and upon the executors offering the will for probate, Susan A. Dixon, a daughter, and his widow, the said Mary E., contested the probate thereof; that all the children and heirs appeared. Evidence was taken, and on July 15, 1876, all the parties appearing in such proceedings entered into an agreement, providing for the withdrawal of the objections to the probate, the issuing of the letters testamentary, without requiring the executors to give bonds or other security; the occupancy by the widow and her said two minor children, of the house and premises 46 West One Hundred and Twenty-eighth street, for five years from May 1, 1876, in addition to the provisions of the will for their benefit; providing further for the payment to Mrs. Dixon of $8,000, in addition to her bequest of $10,000, in specified amounts, out of the shares of other legatees, who assigned their interests to secure their respective quotas: Edward M. and Lorrain C.'s quotas to be taken out of their incomes from the estate, and that

the costs and fees of contestants' proctors and counsel be fixed at $2,000, to be paid out of the estate, and binding themselves each to the other for the faithful performance of the agreement.

The answer further stated that thereafter, and on the 18th of July, 1876, a decree was entered, approving the said agreement, admitting the will and codicil to probate, ordering letters to be issued to said executors, and construing the will, particularly as to the said minor children. That in pursuance of said agreement, the said widow and children entered into possession of said house; that certain of the said legatees had since paid to Mrs. Dixon the amounts due by it; that the contest and other proceedings subjected the estate to large proctor and guardians' counsel fees. That at the time of entering into said agreement, and the entry of the decree thereunder, all the parties to the agreement well knew that neither of said executors had any property, or pecuniary responsibility; that the said accounting was a voluntary one, all of the persons interested being represented therein and the reference thereunder, and that a large amount of testimony had been taken. That in their account they had not credited themselves with any commissions, or charged any, and had not charged themselves with $4,500, borrowed by them for a temporary purpose for the benefit of the estate, and from which loan it did receive a direct benefit and profit, and which had been paid in since the date of said account.

That they appropriated the commissions stated in the petition upon advice of counsel, and for other reasons.

That executor Freeman was without means and practically insolvent. That Kellogg has had no property

since the death of testator, and that nearly all his time has been absorbed in taking care of the estate, and in attending to numerous lawsuits in connection therewith. That after his marriage with decedent's daughter he always had most intimate business and social relations with decedent, who well knew he had no property, except that gained from occasional business, and derived from decedent, who also loaned him the $1,000, knowing he was poor. That executor Williams was a large real-estate holder, and became embarrassed in 1874; that testator knew he was so embarrassed, knew he could not pay his debts, and yet frequently, before his death, expressed his high regard for and confidence in him; that he (Williams) married a daughter of decedent in 1860, and up to 1873 attended to a large number of real-estate and other business transactions for him, and paid over to him large sums of money; that he frequently spoke to each of them about the other, and, knowing their circumstances, expressed great confidence in them; that no testimony was produced before said referee, that any money had been lost to the estate by any act of theirs; that the loan of $4,000 to Amy H. Kellogg is on the same property devised by the will and appraised by the testator at $8,000; that there were several second mortgages on property which they purchased on foreclosures. That all such purchases have resulted without loss, and have yielded an income; that without the utmost care and diligence and the confidence of the holders of first mortgages in their ability to manage such estates, some of the second mortgages might have been lost; that they have economized in

every respect in expenses, and that the children would have been paid a continuing income if the infant children, by their guardians, had not prosecuted to appeal, a second time, a suit which required a reserve to be made to protect executors against the contingency of an adverse decision ; that executor Freeman resides in New Jersey, and came to their office only at irregular intervals ; that he is a man of feeble mind, and easily persuaded by others ; and assisted respondents only by writing up the accounts. That after uniting with them in asking for an accounting he refused to sign the account as rendered, employed counsel, and assumed an antagonistic position ; that not one dollar belonging to said estate has been used for any other purpose than its legitimate business and disbursements, and they refer to the account, testimony, exhibits, &c., in confirmation of their answer. That it is untrue that Freeman ever signed any check in blank which was used for any other purpose than that for which it was signed ; that it was his constant practice to sign checks in blank for his own convenience, and to save himself expense and trouble.

N. REEVE, *for executors Kellogg and Williams.*

CHAS. M. EARLE, *for executor Freeman.*

E. L. FANCHER, *for general guardian, petitioner.*

GEO. B. MORRIS, *special guardian.*

THE SURROGATE.—From a careful consideration of the papers submitted on this motion, and such as I have been able to give to the questions raised on the executors' accounting, I am not able to find that the executors

sought to be removed or required to give security, have become incompetent by law to serve, by reason either of dishonesty, improvidence, or want of understanding. Judge COMSTOCK, in Emerson v. Bowers (14 *N. Y.*, 449, at page 454) defines improvidence, as used by the statute in question (sub. 5, § 3, 3 *R. S.*, 73 [6 ed.]), as follows : " The term evidently refers to habits of mind and conduct which become a part of the man, and render him generally and under all ordinary circumstances unfit for the trust or employment in question." Hence the motion must be determined as to whether the circumstances of the executors are so precarious as not to afford adequate security for their due administration of the estate (§ 19, 3 *R. S.*, 75 [6 ed.]).

Except as to the executor Freeman, who is a non-resident of the state, and who for that reason may be required to give security, it is conceded that the executors are without pecuniary responsibility. But it is claimed, in their behalf, that their condition has not materially changed since their appointment, and that the testator was aware of their impecunious condition when he nominated them by his will, and that the guardian of the infant, who petitions for their removal, with a full knowledge of their condition, entered into an agreement with other of the beneficiaries by which the contest of the will was withdrawn, and it was probated; and that it was thereby provided that said executors should receive letters, and act as executors and trustees, pursuant to the terms of the said will, without security. But I am of the opinion that section 19, above referred to, when it authorizes the Surrogate to require security of an executor when it shall appear that his circum-

stances *are* so precarious, &c., is not affected by the fact that the decedent knew of their pecuniary condition when he appointed them.   I approve and follow the rule laid down by Chancellor WALWORTH, in Wood *v.* Wood (4 *Paige*, 299, at 303.)   "It is not material to inquire whether the testator was aware of the want of responsibility in the executor, at the time of making the will. For if the testator has been so improvident as to commit the administration of his estate to one whose circumstances are such as not to afford adequate security for the faithful discharge of his trust, the court must interfere for the protection of the estate against the effects of such improvidence."   In Holmes *v.* Cock (2 *Barb. Ch.*, 426) it was held that the statute in question was applicable to a case of an executor who had not sufficient property, exclusive of the contingent interest of his wife in the proceeds of the real estate of the testator, to pay his debts.   At page 428, the learned Chancellor, in speaking of an executor, authorized by the will to sell real estate, says : "He may then sell the farm without notice to any one, and being insolvent, there is no certainty that the proceeds will be safe in his hands." These authorities do not seem to me to be overcome by the case of Shields *v.* Shields (60 *Barb.*, 56).   For, in the latter case, there is an obvious misinterpretation of the expression used in the 19th section, "or that his circumstances are so precarious as not to afford adequate security," &c., by ascribing to "circumstances" the personal traits of the executor rather than his pecuniary responsibility.

I am therefore of the opinion that it is my duty to hold that the executors' circumstances are not such as to

afford adequate security for the due administration of the estate, and that they should be required to give security. But as all the adult beneficiaries have, in my opinion, waived their right to demand security by the agreement referred to, no material change having occurred in their pecuniary condition since, they should not be required to give such security, except to cover the interests of the infants, whose guardian had no right to waive such security, and who may, in my opinion, petition for this relief, though the petitioning guardian signed the agreement individually.

I cannot concur with the learned counsel for the petitioner, that it is incumbent upon the executors to show, affirmatively, that they have wisely and honestly administered the estate. When the petitioner alleges their dereliction, she is bound to prove it; and, in respect to the account rendered, it being duly verified and vouched, the onus is upon the objectors to falsify or surcharge.

Ordered accordingly.