NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—
May, 1882.

## MARTIN v. DUKE.

*In the matter of the estate of* RALPH MARTIN, *deceased.*

Thrift, integrity, good repute, business capacity and stability of character are "circumstances," which may be very properly considered in deter-mining the question of "adequate security," upon an objection, under Code Civ. Pro., § 2638, to the issue of letters to one named as execu-tor in a will, on the ground "that his circumstances are such that they do not afford adequate security to the creditors, or persons inter-ested in the estate, for the due administration of the est-te." The word "circumstances" does not refer exclusively to pecuniary respon-sibility.

The statute was by no means intended to restrict a person named as execu-tor from acting as such, without a bond, simply because the testator was richer than himself.

In such case the question for the court is,—is it safe to put this estate in the hands of the person named as executor; can he be trusted to administer it faithfully and honestly, as directed by the will?

The testator, by his will, nominated his wife, M., and his sister, D., as ex-ecutrices. Objections to granting letters testamentary to them, were interposed, on the grounds that they were unacquainted with and in-competent to discharge the duties; that M. was about to absent herself from the State "for an uncertain period of time;" and that neither "the condition and circumstances" of M., nor those of D., afforded "ade-quate security to the persons interested," etc.; and objector asked that letters be refused, unless they first gave adequate security for the ad-ministration of their trust. M. answered that she intended to continue her residence in the State, though she designed to make a summer visit in Europe, and that she had acquired a thorough knowledge of his property and its management from the testator. D. answered that she had had some experience in administering an estate, and owned real property worth $200,000 in Brooklyn.

*Held,* that, as D., at least, was pecuniarily responsible, and both she and M. had sufficient capacity and integrity to make their appointment prudent and proper, aside from property considerations, the objections should be overruled and letters granted.

Freeman v. Kellogg, 4 *Redf.*, 225,—criticised.

THIS was a hearing of objections to the issue of let-

ters testamentary, made by Henrietta Martin, a daughter of testator. The facts appear sufficiently in the opinion.

JOHN M. MARTIN, *for objector.*

ANDERSON & HOWLAND, *for executrices.*

THE SURROGATE.—By the will of the testator, his wife and sister were nominated as executrices. Objections have been interposed to granting to these ladies letters testamentary, upon the ground that they are unacquainted with the duties which they seek to assume and incompetent to discharge them ; that Mrs. Martin, the testator's widow, is about to absent herself from the State of New York "for an uncertain period of time," and that neither "the condition and circumstances" of herself nor those of Mrs. Duke, her sister-in-law, "afford adequate security to the persons interested in the due and proper administration of the said estate and the affairs thereof." The objector accordingly asks that letters testamentary be refused to Mrs. Martin and Mrs. Duke, unless they "first give adequate security" for the administration of their trust.

In answer to these allegations, Mrs. Martin declares, upon oath, that it is her purpose to continue her residence in New York, although she means to make a summer visit in Europe ; that during her husband's life-time she acquired a thorough knowledge of the nature of his property, receiving from him explicit information in respect thereto, and explicit directions as to its management. Mrs. Duke swears that she herself has already had some experience in administering an estate, and that she is the absolute owner of real property, in this city and Brooklyn, worth $200,000.

The foregoing objections to the granting of letters testamentary are claimed to be sufficient, within the provisions of section 2637 of the Code. By this section and the one next succeeding, it is substantially provided that, if legal objection is seasonably made to the issue of letters testamentary, the same shall not be granted, unless upon the filing of a sufficient bond, to any person named as executor, whose " circumstances are such that they do not afford adequate security for the due administration of the estate." The allegations made by the objector herein are inadequate to justify my refusal of letters.

Even if it appeared, as it does not, that the value of the property owned by these applicants for letters was very much less than the value of the testator's estate, I should not, for that reason, feel bound to make the confirmation of their appointment conditioned upon their filing bonds as security for the faithful discharge of their duties.

In Freeman *v.* Kellogg (4 *Redf.*, 225), a construction was put upon certain language in the Revised Statutes, which is substantially equivalent to the phrase now under review. The word "circumstances," in the phrase "or that his circumstances are so precarious as not to afford adequate security," was construed as referring solely to pecuniary responsibility, and not at all to personal character or conduct. The decision of the supreme court, in Shields *v.* Shields (60 *Barb.*, 56), was criticised as an obvious misinterpretation of the statutory provision, and as a departure from the doctrine laid down by Chancellor WALWORTH, in Wood *v.* Wood (4 *Paige*, 299).

I do not put the limited construction upon the word " circumstances" which is suggested in Freeman *v.* Kellogg, nor do I think that any such construction is involved in the decision of Wood *v.* Wood (*supra*).   If the legislature had designed to establish the test of personal pecuniary responsibility as an essential qualification of any person claiming testamentary letters without giving a bond, it would have expressed its intention in much plainer terms.   It has never found any difficulty in declaring the precise sort of security to be exacted from an administrator, and the difference in the phraseology of the respective statutes which affect executors and administrators is, in this regard, very significant.   At common law, the person named as executor was entitled to letters, even though he might be notoriously insolvent.

The statute, for which the present provision of the Code has been substituted, was manifestly designed to give the Surrogate power to refuse letters or to retract them whenever, under all the circumstances of the case, he should be of the opinion that such a course was proper for the protection of the rights and interests of the beneficiaries under the will.   But that statute was by no means designed to restrict a person named as executor from acting as such, even without a bond, simply because the testator was a richer man than himself. Thrift, integrity, good repute, business capacity and stability of character, for example, are " circumstances " which may be very properly considered in determining the question of " adequate security."

The only New York case not yet mentioned, which bears directly on this subject, is Mandeville *v.* Mandeville (8 *Paige*, 475).   In that case, the opinion of Chancel-

lor WALWORTH plainly discloses that, by his decision in Wood *v.* Wood, he by no means intended to intimate that such considerations as have been above suggested might not have weight, upon the question as to what constituted "adequate security." Every case must be considered by itself. In each, the question for the Surrogate is: Is it safe to put this estate in the hands of the person named as executor; can he be trusted to administer it faithfully and honestly, as directed by the will?

Now, for aught that appears in the present case, one at least of the ladies named as executrices is pecuniarily responsible, and both of them have sufficient capacity and integrity to make their appointment prudent and proper, aside from property considerations. Letters may issue.