IN THE MATTER OF THE ESTATE OF ELIAS W. CADY, DECEASED.

*Executor or trustee — right of a surrogate to remove him for habitual drunken-ness or improvidence — 1873, chap. 79 — 3 R. S. (7th ed.), 2289 — Code of Civil Procedure, sec. 2636.*

Elias W. Cady died in 1883, leaving a will made in 1854, and two codicils made respectively in 1856 and 1875. By the will he devised the homestead farm to his son Charles, subject to charges in favor of the testator's daughter Mary, and appointed Charles and his brother Oliver executors and trustees of his will By the codicils he increased the charge created for his daughter Mary. In 1881 he conveyed the homestead to her, subject to certain payments to be made by her. Upon the death of the testator Oliver refused to act, and Charles applied for letters testamentary, his application being opposed by three daughters of the testator, who were of full age and beneficially inter-ested under the will, upon the ground of his alleged drunkenness, improvidence, insolvency and personal hostility to them.

Upon the hearing before the surrogate the latter found that prior to 1880 Charles had used intoxicating liquors, and had at times become intoxicated; that after that time he used them so as to be decidedly under their influence for the greater part of the time, indulging occasionally in sprees which ended in *delirium tremens,* but that for several months prior to, and especially during the pendency of the present proceedings, his indulgence had been less open and excessive than theretofore; that in 1879 Charles was a man of means, esti-mating himself to be worth about $29,000; that since that time he had become insolvent and was unable to pay his debts.

*Held,* that the surrogate properly refused to issue letters testamentary to Charles, and properly removed him from his office as trustee, on the ground of his incompetency by reason of improvidence and habitual drunkenness.

APPEAL from a decree of the Surrogate of Tompkins county, refusing letters testamentary to Charles Cady as executor of Elias W. Cady, deceased, and also removing him from the position of tes-

tamentary trustee under the said last will and testament of Elias W. Cady.

Elias W. Cady died in the spring of 1883, leaving a last will and testament, executed in 1854, in and by which he devised the homestead property of nearly 200 acres, upon certain conditions to Charles Cady, and naming Charles and his brother Oliver as executors and trustees. Subsequently, and on December 30, 1856, and on July 8, 1875, the testator made codicils to his will, diminishing the devise to Charles, by making increased charges thereon for the benefit of testator's daughter Mary. In June and September, 1881, the testator conveyed to Mary Cady the homestead, being that property which had been devised to Charles subject to certain payments to be made to her; thus leaving Charles without any interest in the will, except as executor and trustee under the same. About 400 acres of land known as the Cramer farm were devised to Charles Cady and Oliver Cady in trust, to sell the same within five years, and out of the proceeds to pay their sister Mary Cady $3,000, and divide the balance equally between Mary and her two sisters, Harriet S. Furguson and Rebecca A. Dwight.

Upon the probate of the will, Oliver refused to act as executor, thereby leaving Charles Cady as sole surviving executor, and thereupon the three sisters objected to their brother Charles acting as executor and their trustee, upon the ground of his alleged drunkenness, improvidence, insolvency and personal hostility and unfriendliness to them, and upon the further ground that he was seeking to injure the estate by inducing the creditors to levy upon all the personal property left by his father, claiming it belonged to him. The objections were in writing and were verified. During the progress of the trial had thereon before the surrogate, Harriet S. Furguson withdrew her objections.

The surrogate found "that Charles Cady, for several years prior to the spring of 1880, had been in the habit of using intoxicating liquors, occasionally becoming intoxicated thereby; but that about the spring of 1880 such use became much more frequent than theretofore, so that a greater part of the time he was under the decided influence of intoxicating liquors, sometimes indulging in protracted sprees and ending in *delirium tremens*; but that for several months prior to, and especially during the pendency of the

present proceedings, that indulgence has been less open and excessive than theretofore. That in the year 1879 Charles Cady was a man of means, he himself estimating his property at that time at about $29,000; that since 1879 he has become insolvent and unable to pay his debts."

As a conclusion of law the surrogate found, first, "that said Charles Cady, by reason of improvidence and habitual drunkenness, is incompetent to act as executor and testamentary trustee under the will and codicils of the said Elias W. Cady, deceased; that a decree should be entered denying letters testamentary to said Charles Cady as executor, and also removing him from the office of testamentary trustee under said will." This decision was made and filed March 24, 1884.

Upon the hearing there was evidence tending to establish that Charles Cady induced the creditors to levy upon and sell the personal property upon the homestead upon an avowal that it belonged to him, and that litigation would be necessary to settle the rights of the estate and the legatees in the property. There was also a great contrariety of evidence touching the habits, acts and conduct of Charles Cady, covering a period of several years prior to the 28th of April, 1883, offered by the objectors to sustain their allegations; and, also, considerable evidence was offered by the appellant to overthrow the testimony offered by the objectors; and in this evidence very many contradictions are found, not necessary to be referred to in detail.

*H. V. Howland* and *Geo. E. Goodrich*, for Charles Cady, appellant.

*Halliday & Finch*, for Mary Cady and others, contestants and respondents.

HARDIN, P. J.:

Section 3 of the Revised Statutes, as amended by chapter 79 of the Laws of 1873, provides as follows, viz.: "No person shall be deemed competent to serve as an executor who, at the time the will is proved, * * * upon proof, shall be adjudged by the surrogate to be incompetent to execute the duties of such trust by reason of drunkenness, dishonesty, improvidence or want of understanding." (3 R. S. [7th ed.], 2289.)

Section 2636 of the Code provides that after the proof of a will, letters testamentary shall be issued to the person or persons named in the will, unless a person interested, or a creditor, in the estate files an affidavit " setting forth specifically one or more legal objections to granting the letters to one or more of the executors, or stating that he is advised and believes there are such objections, and that he intends to file a specific statement of the same."

It is provided in section 2637 that " the surrogate must inquire into an objection filed, as prescribed in the last section ; and for that purpose, he may receive proof by affidavit or otherwise in his discretion. If it appears that there is a legal and sufficient objection to any person named as executor in the will, letters shall not be issued to him except as prescribed in the next section." It may be observed that this section provides that investigation may be had upon proof by affidavit or in such other manner as in the discretion of the surrogate shall be allowed. Manifestly, it was the intention of the legislature to provide for a somewhat speedy and summary determination of the questions raised by objections made to the competency of a person to serve as executor.

In *McGregor* v. *Buel*, where the question under consideration was whether special letters of administration should be issued or not, to preserve the property pending an appeal from the probate of a will, at page 169. 24 New York, Judge DENIO, observes, viz.: " The statute, in terms, makes the granting of such letters discretionary ; and the propriety of issuing or withholding them is plainly dependent upon the exigencies of the estate, the amount and situation of the estate, and other circumstances which require to be *judged of summarily*, and are not suitable to be litigated through the courts upon appeal ; the determination of the surrogate upon such questions is, as it should be, summary and exclusive."

While that authority is not precisely in point upon the question now before us, we think the quotation not inopportune, as, after a full consideration of the great volume of evidence taken before the surrogate in this case, we are disinclined to disturb the findings of fact made by the learned surrogate ; he saw the witnesses ; heard them testify, and, upon a question involved in so much conflict, was better prepared to reach a correct result than we can be by scanning the evidence found in the appeal book.

The primary question to be considered upon all the evidence before the surrogate, was whether or not the improvidence of Charles Cady was shown to be such that the surrogate might properly adjudge that he was incompetent to execute the duties of the trust conferred upon him by the will. In *Coope* v. *Lowerre* (1 Barb. Ch., 45), the chancellor says, viz. : " The improvidence which the framers of the Revised Statutes had in contemplation as a ground of exclusion, is that want of care or foresight in the management of property which would be likely to render the estate and effects of the intestate unsafe and liable to be lost or diminished in value by improvidence, in case administration thereof should be committed to such improvident person. The principle of exclusion in this part of the statute is based upon the well known fact that a man who is careless and improvident, or who is wanting in ordinary care and forecast in the acquisition and preservation of property for himself, cannot with safety be intrusted with the management and preservation of the property of others." In *McMahon* v. *Harrison* (6 N. Y., 443), it was held that the fact that a man was a professional gambler, is presumptive evidence of such improvidence as to render him incompetent to discharge the duties of executor or administrator, and the definition which we have quoted from the chancellor (quoted in *Coope* v. *Lowerre, supra*), was there approved, and the judgment of the court was, that such an improvident person ought not to be intrusted with an estate. In *Emerson* v. *Bowers* (14 N. Y., 449), the court in speaking of improvidence, says : " The term evidently refers to habits of mind and conduct which become a part of the man, and render him generally and under all ordinary circumstances unfit for the trust or employment in question." That definition was referred to approvingly by the court in *Freeman* v. *Kellogg* (4 Redf., 224).

Under the interpretation of the statute given by the authorities to which we have referred, we think the evidence before the surrogate amply justified him in concluding that the executor, by 'reason of his improvidence, was incompetent to execute the duties of the trust, and that he was justified in withholding letters testamentary from him. It was urged on the argument before us, that considerable force should be given to the fact that the testator had selected the executor. In considering

that fact, it must be borne in mind that subsequent to 1854, by virtue of codicils and conveyances made by the testator in his lifetime, he gave a different direction to that portion of his estate which he originally intended for his son Charles Cady, and that at the time of the death of the testator the only interest which remained under the will to pass to the executor was such as he might derive by virtue of the office as executor and trustee.

However, it was decided by the chancellor in *Wood* v. *Wood* (4 Paige, 299), that no great significance attaches to the circumstance that the testator had named the executor. He says in that case, viz.: "It is not material to inquire whether the testator was aware of the want of responsibility in the executor at the time of making of the will. For if the testator has been so improvident as to commit the administration of his estate to one whose circumstances are such as not to afford adequate security for the faithful discharge of his trust, the court must interfere for the protection of the estate against the effects of such improvidence."

This language of the chancellor was quoted approvingly in the case of *Freeman* v. *Kellogg* (4 Redf., 225).

We are disposed to approve of the sentiment expressed by the surrogate of New York county in *Martin* v. *Duke* (5 Redf., 601), wherein he says, viz.: "Every case must be considered by itself. In each the question for the surrogate is: Is it safe to put this estate in the hands of the person named as executor; can he be trusted to administer it faithfully and honestly as directed by the will?"

We think in this case some attention should be given to the circumstance that two of the three beneficiaries under the will who were adults and capable of understanding their legal rights, objected to the appointment of the person named as executor; also some attention to the threats, shown to have been made by the executor in respect to his intentions in respect to the maladministration of the estate, if he should obtain possession of it.

While these considerations are not at all controlling, they may properly have had weight with the surrogate in considering the mass of evidence bearing upon the vital question submitted for his determination.

We are not warranted in saying that the findings were erroneously reached by the surrogate, and that his determination in withholding

letters testamentary was not in accordance with the weight of evidence before him. We, therefore, upon this branch of the case, sustain the result reached by the surrogate.

*Second.* In respect to the removal of Cady as testamentary trustee, it may be observed that the surrogate came to the conclusion that he ought to be removed at the same time that he reached the conclusion that he ought not to be appointed executor.

Section 2817 of the Code of Civil Procedure authorizes the surrogate to make such a removal of a testamentary trustee " where, if he was named in a will as executor, letters testamentary would not be issued to him by reason of his personal disqualification or incompetency." We are of the opinion that the evidence before the surrogate warranted the conclusion reached by him upon the question appertaining to the removal. The surrogate had jurisdiction to make the removal. (Code of Civ. Pro., sec. 2817 ; *Savage* v. *Gould*, 60 How., 254, and the citations found therein in the opinion of BOARDMAN, J.)

We are of the opinion that the rulings upon the hearing by the surrogate were sufficiently favorable to the appellant.

Section 2637, as we have before intimated, provides for such an inquiry as was had before the surrogate, being upon affidavit or in such other manner as within the discretion of the surrogate should be ordered by him.

We have found no error in the course of the trial calling upon us to disturb the conclusions found by the surrogate.

We think the decree of the surrogate of Tompkins county should be affirmed, with costs against the appellant, personally.

FOLLETT, J., concurred ; BOARDMAN, J., not voting.

So ordered.