NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1886.

### POSTLEY *v.* CHEYNE.

## *In the matter of the estate of* ALEXANDER F. STER-LING, *deceased.*

The fact that executors are "men of inconsiderable means, not transact-ing business or having any place of business," does not show that their "circumstances are such that they do not afford adequate secu-rity for the due administration of the estate," within the meaning of Code Civ. Pro., § 2685, prescribing the grounds for revocation of letters testamentary.

Where letters testamentary have been issued to one not a resident of the State, they cannot be revoked because of his continued non-residence, nor can an official bond be required of him upon that ground.

The will of testator nominated as two of its executors two residents of another state, expressly providing that they might act as such without giving security.   The nominees were respectively the treasurer and the cashier of a foreign manufacturing corporation having its principal office in the city of New York, and attended daily thereat, in such capacities, during business hours.—

*Held*, that they had "an office within the State, for the regular transac-tion of business in person," within the meaning of Code Civ. Pro., § 2638, and were entitled to letters without giving bonds.

Where a will appoints three persons trustees to receive the rents and income of property, and apply the same to the use of one of their number during life, with remainder over, the two who do not take beneficially are entitled to the custody of the principal of the trust fund, to the exclusion of the other.

CONTEST among co-executors; the facts respecting which are sufficiently stated in the opinion.

BROOKE POSTLEY, *for executrix.*

A. UNDERHILL, *for executors.*

THE SURROGATE.—This testator left at his decease

real and personal property of the value of about fifteen hundred thousand dollars.   By his last will and testament, which was. admitted to probate in February, 1885, he appointed his daughter, Margaret S. Postley, executrix, and Hugh Cheyne and John Scott (whom he characterized as his "friends") executors, declaring that he had entire confidence in their integrity, and therefore directed that they should not be required to give bonds for the faithful performance of their duties.

Upon the day the will was admitted to probate, letters testamentary were granted, no person objecting, to all three of the above named persons. At that time neither Mr. Cheyne nor Mr. Scott was a resident of New York.   They both resided and have ever since resided in the state of New Jersey.

The decedent's entire estate, except a comparatively small amount bequeathed as legacies and annuities, is given by the will to his executors and executrix upon certain specified trusts.   They are vested with authority to sell all or part of the real property in their discretion, to invest the proceeds thereof and the proceeds of the personal estate, to collect and receive the rents and income, and to " apply the said rents and income, as they accrue, to the use of my (his) daughter, Margaret S. Postley, during the term of her natural life, and at her death the said trust property shall go to her issue, if she leave any, but if she leave no issue, then my said executors shall pay out of the said trust property to my son in law," etc. Mrs. Postley, thus named in the will as executrix and

*cestui que trust,* has filed a petition asking for relief in various forms against executors Cheyne and Scott.

*First.* I am asked to revoke the testamentary letters of the respondents upon the ground that, within the meaning of subdivision 5 of § 2685 of the Code of Civil Procedure, their "circumstances are such that they do not afford adequate security for the due administration of the estate."

This claim is not supported by the proofs. Indeed the averments of the petition, even considered apart from the answer, do not make out a case for revocation of letters under such fifth subdivision. The respondents are alleged to be "men of inconsiderable means not themselves transacting any business or having any place of business." That is all and that is not enough (Martin v. Duke, 5 *Redf.*, 597; Grubb v. Hamilton, 2 *Dem.*, 414).

*Second.* The fact that the respondents reside without the State of New York is claimed to justify and require the revocation of their letters or the exaction of a bond for the petitioner's protection. In opposition to this claim it is urged that, as the respondents were non-residents when they obtained such letters, the mere continuance of that *status* is not of itself a sufficient ground either for pronouncing sentence of revocation or for requiring security.

Section 2636 of the Code of Civil Procedure provides that, immediately after a will has been admitted to probate, the persons therein named as executors, who are competent by law to serve, and who appear and qualify, " *are entitled* to letters testamentary," unless before such letters are granted some person

interested in the estate interposes an objection, in the manner by such section indicated. The grounds upon which letters must or can be refused, in case objection is made to their issuance, are nowhere specified in the Code. A statute in force at the time the Code was enacted and abrogated by the General Repealing act of 1880 (L. 1880, ch. 245) declared that, with certain exceptions, which need not now be specified, a non-resident applicant should not be granted letters testamentary except upon giving a bond (R. S., part 2, ch. 6, tit. 2, § 7; 3 Banks, 6th ed., 73). While there is now no direct and explicit provision of law that an objection to the issuance of letters testamentary on the ground of the non-residence of the applicant must be sustained, unless such applicant executes a bond for the faithful discharge of his duties, the legislature has indicated by § 2638 of the Code its adherence to the policy of the repealed statute. That section impliedly recognizes the force of an objection based upon non-residence, by declaring that such an objection shall not prevent the issuance of letters *if* the applicant shall give a bond as prescribed by law.

In the absence of such opposition, however, letters may be properly issued without a bond, as they were in fact issued in the case at bar (Estate of Demarest, 1 *Civ. Pro. Rep.*, 302 ; Estate of Vernon, *id.*, 304, *n*).

Now the grounds upon which letters may be *revoked* are set forth in the eight subdivisions of section 2685 of the Code. None of these subdivisions can be claimed to have any reference to the question of non-residence except the 6th, and possibly the 1st. The 6th is clearly inapplicable to such a situation as

here exists, being in express terms limited to the case of an executor's removal or intended removal from the State *after* the issuance of letters. Subdivision 1st is operative only "where the executor was, when letters were issued to him, or has since become *incompetent or disqualified by law to act as such.*"

It is insisted by the petitioner's counsel that the case at bar falls within the subdivision just quoted. I am of a different opinion, and for several reasons:

*1st.* Because if that subdivision relates to non-residence at all it covers cases in which an executor becomes a non-resident *after* as well as cases in which he was a non-resident *before* obtaining letters. But such cases are distinctly and expressly provided for by subdivision 6. Of two possible constructions of subdivision 1, that should of course be preferred, other things being equal, which does not make subdivision 6 utterly superfluous.

*2nd.* For the reasons stated by Surrogate LIVINGSTONE and Surrogate CALVIN in Estate of Demarest and Estate of Vernon (*supra*), I hold that these respondents are not now, and were not at the time of obtaining letters, *incompetent or disqualified* by the fact of non-residence to act as executors. On the contrary, in spite of such non-residence they are and were competent and qualified, within the meaning of § 2638.

*3rd.* There is still another reason for holding that an executor's non-residence is not sufficient warrant for revoking his letters, where he was such non-resident at the time the letters were granted, and where his *status* as such non-resident has remained unchanged.

In the attempted transference, into the Code, of the well considered scheme of the Revised Statutes in regard to non-resident executors, an important provision seems to have been overlooked. I refer to the provision which permitted an executor whose letters were sought to be revoked on account of his removal or intended removal from the State, to prevent such revocation by the interposition of a bond (R. S., part 2, ch. 6, tit. 2, §§ 20, 21 ; 3 Banks, 6th ed., 75). As the law now stands, this is impossible. If it is shown that after the grant of letters an executor has abandoned his residence within the State, or is about to abandon it the Surrogate *must* (except in certain cases which will hereafter be noted) decree revocation.

Now if § 2685 covers cases of non-residence which existed at the time of the grant of letters, this result follows : that though in the absence of objection, a non-resident executor has an absolute right to letters even without giving a bond, and though he has that right, even in the face of objection, upon furnishing such bond, the letters must as soon as granted be taken away if any person interested in the estate demands it. An interpretation which involves such absurd consequences should certainly be avoided, if the language to be interpreted is capable of some other sensible construction.

For the foregoing reasons, I hold that, when letters have been issued to a non-resident executor, they cannot be revoked merely because of his continued non-residence, nor can any bond be for that cause required of him.

*Third.* It is claimed by the respondents that, even

if they are wrong in the contention that I have just sustained, they are entitled to retain their letters testamentary without giving bond by virtue of the last clause of § 2638 (*supra*). That clause declares that a person named as executor in a will, " against whom there is no objection except that of non-residence, is entitled to letters testamentary without giving a bond, if he has an office within the State for the regular transaction of business in person, and the will contains an express provision to the effect that he may act without giving security." There is no dispute about the facts to which this provision is claimed to be applicable.

The Singer Manufacturing Co. is a foreign corporation organized under the laws of New Jersey. It has had for many years, and now has, an office in the city of New York. In that office, both of these respondents are personally engaged from day to day in the transaction of the business of the corporation. One of them, Mr. Cheyne, is a stockholder of such corporation, its treasurer and a member of its board of directors. The other, Mr. Scott, has long been, and is now, its cashier. Mr. Commissioner THROOP, in a note to § 2638 of his edition of the Code, says that that section is intended as a consolidation of a part of § 6, tit. 2, ch. 6, part 2, R. S. (3 Banks, 5th ed., 155), and of chapter 657 of the Laws of 1873 — and adds that " the description of a person having a place for the transaction of business within the State has been modified so as to correspond with the expression used *in pari materia* throughout this act "— that is, throughout part 2 of the Code.

The Revised Statutes (§ 7 of the title just cited) made the issuance of letters to non-resident executors conditional upon the execution of a bond, allowing no exception in case of such non-residents as might be engaged in business within the State.    This provision was amended by the Act of 1873, above referred to, so as to read as follows :  " Such non-resident executor may receive such letters without bonds if the testator, by words in his last testament, has requested that his executor be allowed to act without giving bonds, *and if such executor has his usual place of business within the State.*"

There could scarcely have been any difficulty in interpreting that provision.    I think that such a case as the present would clearly have fallen within it. Now, does the provision by which it has been displaced cover substantially the same ground, or has it a narrower scope or a wider ?

Sections 3160 and 3169 of the Code are evidently the sections to which Mr. THROOP refers in his note above quoted.    Section 3160 provides that where the plaintiff in an action brought in the Marine court has " an office for the regular transaction of business in person " within the city of New York, he shall be deemed a resident of that city within the meaning of §§ 3268 and 3269, which relate to security for costs. Section 3169 prescribes the proofs necessary to be adduced in obtaining from a Justice of the Marine court a warrant of attachment, and declares that when the ground of the application is that the defendant is a non-resident of the city of New York, it must appear by affidavit that such defendant " has not an

office within that city where he regularly transacts business in person."

From Mr. Throop's preliminary note, to the title of which §§ 3160 and 3169 form a part, it appears that in his view those sections were meant to be a substantial reproduction of chapter 136 of the Laws of 1876, which declares that "no person being a resident of the State of New York, who shall have a *place of business* in the city of New York, shall be deemed to be a non-resident under the provisions of this act."

I agree with Mr. Throop in thinking that the expression " usual place of business " as it was employed in chapter 657 of the Laws of 1873 is co-extensive in meaning with the expression, " office for the regular transaction of business in person," now appearing in § 2638. And upon the proofs submitted in this proceeding I hold that, by virtue of the last clause of that section, the respondent executors, when they obtained letters, would have been entitled thereto without a bond, even though the grant of such letters had been opposed on the score of non-residence, and that accordingly the application for the revocation of letters because of such non-residence must be denied.

*Fourth.* The petitioner asks that, in case she shall be found entitled to no other relief, the Surrogate shall, in the exercise of his discretionary authority under § 2602, direct a deposit of the property of the estate to the joint credit of the executors and the executrix, and subject to their joint order.

I should give this direction if I did not feel constrained by the authority of Bundy v. Bundy (47 *Barb.*, 135 ; 38 *N. Y.*, 410) to sustain the respond-

ent's contention that, in view of the provisions of the will making the petitioner the beneficiary of the rents, profits and income, they themselves are entitled to the custody of the funds of this estate to the petitioner's exclusion. I can not find that Bundy v. Bundy has ever been overruled or adversely criticised. The petitioner's application must be in all things denied.