McMahon *v.* Harrison.

---

NEW-YORK GENERAL TERM, March, 1851. *Edmonds, Edwards, and Mitchell,* Justices.

McMAHON and wife, *appellants,* vs. HARRISON, *respondent.*

Under the provisions of the revised statutes respecting the granting of letters of administration in cases of intestacy, vice and moral delinquency will not, of themselves, disqualify a person to act as administrator. But a professional *gambler* is disqualified by reason of improvidence.

THIS was an appeal, by Dennis McMahon, jun. and wife, from an order or decree of the surrogate of the county of New-York, granting letters of administration *cum testamento annexo* upon the estate of Ruth S. Rathbone, to the respondent Harrison. Upon the application of Harrison for letters of administration the appellants appeared and filed their caveat and objections, showing that they were interested in the appointment of administrator upon the estate, as creditors of the decedent, and that Lucy Ann, the wife of Dennis McMahon, jun. was interested as one of the children of the deceased and as one of the legatees in her will. They further alledged that Harrison was incompetent to act as administrator, because of improvidence, namely, that he was addicted to gambling, and had kept and did still keep a place let for the purpose of gambling, in Santa Fe, in New

McMahon *v.* Harrison.

Mexico; that he had no regular profession except as a monté player and gambling, which rendered him liable at any time to be arrested, tried, and convicted as a criminal; that he was in the habit of betting and losing large sums of money on horse-races, cards, dice, cock-fights, and other species of sporting; that he resided at Santa Fe, and his course of life there was, and for several years had been, of a roving, wild and unsettled character, following no regular business, trade or profession. For these reasons they objected to the granting of letters of administration to him, and prayed that the same might be granted to Dennis McMahon, jun. in right of his said wife. These allegations were denied by the petitioner.

*R. Lockwood*, for the appellants.

*Albert Matthews*, for the respondent.

*By the Court*, EDWARDS, J. The principal ground of objection to the order of the surrogate is, that the respondent is disqualified to act as administrator, by reason of his improvidence. The only evidence in the case bearing upon this point, consists of a letter written by the respondent in Nov. 1848, in which he states in substance, that he was at that time a professional gambler; that he opened a bank of $2,500 every night, and that his business had been successful. The appellants applied for a commission, to be sent to the place where the respondent had carried on his gaming occupations, for the purpose of producing further testimony as to his habits of life. This application was denied, and the respondent offered no testimony in contradiction or explanation of the admissions contained in his letter. Under these circumstances we think that we are warranted in the conclusion, as far as this case is concerned, that there has been no change in his business or habits. The question then arises whether, upon this state of facts, he is incompetent to act as administrator by reason of improvidence, within the meaning of the statute. (2 *R. S.* 75.)

Upon the argument of the appeal, the counsel for the respon-

McMahon *v.* Harrison.

dent relied, chiefly upon the decision of the late chancellor, in the case of *Coope* v. *Lowerre,* (1 *Barb. Ch.* 45.) In that case testimony had been taken for the purpose of showing that the party applying for letters of administration had been guilty of various offenses, and that he was unworthy of trust, on account of his imputed vices. Upon this testimony the chancellor held, and undoubtedly correctly, that no degree of moral guilt or delinquency is sufficient to exclude a person from the administration as next of kin, in cases of preference given by the statute, unless such person has been convicted of an infamous crime. It must follow then, if we carry out these views, that there is nothing in the immorality of the respondent's occupation which makes him incompetent. In the case above cited, it was shown that the party whose right to administration was contested, had been guilty of a single act of moral delinquency, for which a large verdict had been recovered against him, and the chancellor held that, although that was not proof of improvidence, still if the party had been guilty of frequent offenses of the kind, and at considerable expense of property from time to time, there would have been evidence of improvidence.

In the case before us it seems that the habitual occupation of the respondent is to put large sums of money at hazard upon games of chance. The common and familiar history of gaming teaches us how suddenly even large fortunes may be lost, and that too not only by the ignorant and inexperienced, but by those who possess all the advantages of practice and skill. The man who is a gamester by profession, may lose all that he owns at any time. There is undoubtedly a species of knowledge and skill which may give a person who plays, even with entire fairness, an advantage over another. But this does not alter the general rule as to the uncertainty of all gaming transactions; and it is well known that the gambler becomes desperate as he becomes unsuccessful. He is not checked in his course by his losses. And when his skill or his fortune fails him, he will not only stake all that he owns, but all that he possesses or controls. It seems to us that such a man can not be regarded as provident either in reference to the present, or

the future. And the mere fact that he has been successful, instead of showing that he is not improvident, shows rather that hitherto he has, by good fortune, escaped the ordinary effects of improvidence. There are undoubtedly different kinds of improvidence. There is the improvidence of the man who is negligent in the management of his property, and profuse in his expenditure. This is a species of improvidence which, if continued, must lead to ruin. And if we can trust the testimony of those who have had opportunities of observation, the habitual gamester who escapes the same result is the rare exception.

But it has been suggested that the respondent conducts his business in such a manner that he is not subject to the ordinary risks which attend games of chance. If this means that he possesses superior skill, the obvious answer is, that he is liable to meet with others who have equal skill with himself. And in addition to this, in all games of chance there must be something of advantage to one party, or the other, arising from the turn of fortune in his favor. If, however, it means that the respondent is so far skilled in his profession, that by art, deception or trick, he can change what would be, if conducted with fairness, a game of chance, into a scheme of plunder, it seems to us that it is a consideration to which it would hardly be contended that this court should give much weight. If we are correct in the conclusion that gaming, when conducted with fairness is evidence of improvidence, can we say that in this case the respondent is free from any such imputation, because, in the peculiar manner in which he carries it on, the ordinary results will not follow?

We agree with the surrogate that we have nothing to do with the immorality of the respondent's occupation, and we concur in the general doctrine, that under the provisions of the statute vice and moral delinquency can not, of themselves, disqualify a person to act as administrator; but we also think that a professional gambler is disqualified, by reason of improvidence.

The decree of the surrogate must be reversed.