[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 451 
The question in this case depends upon the proper construction to be given to that provision of the Revised Statutes by which the surrogate is authorized, under certain circumstances, to supersede letters testamentary issued to an executor appointed by the will of a testator. (2 R.S., 72, §§ 18-21.) These sections authorize any person interested in the estate to make complaint "that the person so appointed executor has become incompetent by law to serve as such, or that his circumstances are so precarious as not to afford adequate security for his due administration of the estate, or that he has removed or is about to remove from the state;" upon which the surrogate is to inquire into the matter. If "it appear that the circumstances of the person so appointed (as executor) are precarious, as aforesaid, or that such person has removed or is about to remove from this state, he (the surrogate) shall require such person to give bond, with sureties like those required of administrators, within a reasonable time, not exceeding five days." (§ 20.) "If such person neglect to give such bond, or if it appear that he is legally incompetent toserve as executor, the surrogate shall, by order, supersede the letters testamentary," c. The surrogate did not require this executor to give security, but, in the first instance, made an order superseding the letters testamentary; and the question to be determined is, whether it was made to appear that the appellant was legally incompetent to serve as executor, within the meaning of that expression in the statute. The foregoing language should be compared with the section of the same article which prescribes what persons shall not be "deemed competent" to serve as executors. They are these: First. Who are in law incapable of making contracts, except married women; Second. Those under the age of twenty-one years; Third. Aliens not residents of the state; Fourth. Who shall have been convicted of an infamous crime; and Fifth. Those "who, upon proof shall be adjudged incompetent by the *Page 453 
surrogate to execute the duties of such trust, by reason of drunkenness, improvidence or want of understanding." (Id.,
69, § 3.) The same grounds of exclusion are prescribed in the provision respecting the qualifications of administrators. (Id., 75, § 32; Laws of 1830, ch. 320, § 18.) The precise inquiry therefore is, whether Bowers was shown to be legally incompetent to serve as executor by reason of improvidence.
The legislature has not conferred upon the surrogates the power of removing an executor from his office on account of misconduct or mismanagement of the trust, nor, in the first instance, because he is insolvent. There was no evidence in this case as to the conduct of this executor in regard to business generally, or as to the character of his mind or the nature of his habits, as a person of prudence and forecast, or one destitute of these qualities. The proof that he was illiterate and of small pecuniary means does not bear upon the present question. The latter circumstance might, in connection with the other facts which were proved, have warranted an order requiring him to give security, but it does not touch the question of improvidence, except in a very general way and in a remote degree. But his conduct in intrusting the whole of the funds, securities and business of the estate to his attorney, without keeping himself informed of the particulars of its management, and especially in using the moneys of the estate himself, with or without security, was highly censurable; and the kind of security which he professed to give was such as no trustee has a right to take in the case of an authorized loan. We have no means of judging of the merits of the litigations which have been carried on, at such great expense to this estate, and cannot certainly say that they might have been avoided by the exercise of good sense and sound discretion; though no one, we think, can fail to see that the interests of the parties entitled to these moneys have greatly suffered by the course which has been *Page 454 
pursued. But to hold that these acts of the appellant make out a case of incompetency, by reason of improvidence in the sense of the statute, would be to give the language a very loose and undiscriminating interpretation. All departures in conduct from the principles of rectitude, including all abuses of trust, are unwise and inexpedient, and therefore, in a certain sense, improvident; but they do not constitute the kind of improvidence which the legislature had in view in these enactments. A very careful, shrewd and money making person may be guilty of negligence or abuse in a fiduciary capacity, but such a person is not improvident in the sense of the statute. The words with which the term is associated, "drunkenness," "want of understanding," are of some importance in arriving at its true construction. The term evidently refers to habits of mind and conduct which become a part of the man, and render him generally, and under all ordinary circumstances, unfit for the trust or employment in question. There is no evidence that this is the case with this executor. He may be ordinarily careful and prudent in business, and he may be quite capable, if he were well disposed, of managing this estate discreetly and safely. The utmost which can be said is that he has misbehaved himself in this trust; but unfortunately the jurisdiction to make the order appealed from does not attach upon such a state of things alone. If he was possessed of such general qualities of mind and conduct as to render him fit to be intrusted with the office for which the testator selected him, but has, nevertheless, mismanaged the trust, he is to be proceeded against for such mismanagement, instead of being declared incompetent from improvidence, where it is probable that his particular delinquency was owing to the preponderance of very different traits of character. If the misconduct attributed to, and, I think, proved upon the appellant, establishes incompetency, and therefore brings him within this particular remedy, most breaches of trust might be considered the result of a *Page 455 
similar defect of character, and by this course of reasoning the surrogates would possess a jurisdiction which the legislature never bestowed upon them. I think the chancellor took a somewhat similar view of the statute, in Coope v. Lowerre (1 Barb.Ch. R., 45). That was an appeal from a decision of the surrogate appointing the respondent administrator of the estate of his deceased brother. He was, if competent, primarily entitled to the office. He had, some time before, applied for a discharge under an insolvent act, and according to his statement on that occasion he had been grossly negligent in the management of his property and affairs, and in the contracting of debts, by indorsing for strangers, without visible means of payment; and the jury empanneled to pass upon his application found a verdict against him. The chancellor said he could not bring his mind to the conclusion that he was improvident to such a degree as to render him incompetent to discharge the duties of an administrator. It was also shown, in reference to the respondent, that he had had a verdict against him in an action for seduction, and other imputations were made upon his moral character; but the chancellor held that no degree of moral guilt or delinquency would be sufficient to exclude him, unless he had been actually convicted of crime. He considered the basis of exclusion on the ground of improvidence to be the want of ordinary care and forecast in the acquisition and preservation of property. This court, in McMahon v. Harrison (2 Seld., 448), held that a professional gambler was presumptively incompetent to be appointed administrator, but in the prevailing opinion it was conceded that the statute had no regard to moral delinquency in the executor.
It is to be regretted that a course was not pursued in this case which would have furnished security for the persons interested in the estate; but we are constrained to say that the order which was made cannot be sustained. *Page 456 
The judgment of the supreme court and the order of the surrogate must be reversed.
DENIO, C.J., A.S. JOHNSON, SELDEN and T.A. JOHNSON, Js., concurred with COMSTOCK, J.; HUBBARD and MITCHELL, Js., dissented; WRIGHT, J., was not present.
Judgment reversed, without costs.