## SURROGATE'S COURT.

### In the Estate of JULIA O'BRIEN, deceased.

*Administrators — Qualification of — Disqualification of person convicted of infamous crime — Prohibition extends only to persons convicted in this state — Persons incompetent by reason of improvidence — Conviction for larceny in a foreign jurisdiction — No evidence of.*

The statute prescribing the qualifications of administrators (*sec.* 32, *tit.* 2, *chap.* 6, *part* 2, *R. S.*, [3 *Banks*, 7th *ed.*], 2291) forbids the issuance of letters to "a person convicted of an infamous crime:"

*Held*, that this prohibition extends only to persons convicted within the state of New York.

The same statute provides that "no letters of administration shall be granted * * * to any person who shall be judged incompetent by the surrogate to execute the duties of such trust by reason of improvidence."

*Held*, that a conviction for larceny in a foreign jurisdiction is no evidence that the person convicted is "incompetent by reason of improvidence."

*New York county, October*, 1884.

ROLLINS, *S.* — Of the two persons who are applicants for letters of administration in this estate, one a son of decedent, the other a grandson, the former is, of course, entitled in priority, unless he is for some cause disqualified. Evidence has been submitted tending to show that he has been convicted in the state of New Jersey of the crime of larceny, and it is insisted that by such conviction he has become incapacitated from receiving letters. The statute which is claimed to create such disqualification is in words following: "No letters of administration shall be granted to a person convicted of an infamous crime, nor to any one incapable by law of making a contract, * * * nor to any person who shall be adjudged incompetent by the surrogate to execute the duties of such trust by reason of drunkenness, improvidence or want of understanding" (*Sec.* 32, *tit.* 2, *chap.* 6, *part* 2, *Rev. Stat.* [3 *Banks*, 7th *ed.*], 2291).

In the Estate of Julia O'Brien, deceased.

Upon the facts here presented two questions arise for determination :

1. Does one, by reason of his conviction of an offense against the laws of a foreign state, ever become "a person convicted of an infamous crime," within the meaning of the statute above quoted ?

The signification of the term "infamous crime," wherever that expression occurs in our statutes, is absolutely fixed by section 31, chapter 1, title 7, part 4, Revised Statutes (3 *Banks*, 7th ed., 2539). It is there declared that "whenever the term *infamous crime* is used in any statute it shall be construed as including every offense punishable with death, or by imprisonment in a state prison, and no other." It follows, therefore, that the first clause of section 31, which prescribes the qualifications of administrators, must be construed precisely as if it were thus worded: "No letters of administration shall be granted to a person convicted of a crime punishable by imprisonment in a state prison." This translation, so to speak, of the language of the section makes very apparent the embarrassment that must attend any interpretation whereby a conviction without this state would be accorded the same force and effect as a conviction within its limits. Surely nobody would contend that the legislature had, by this enactment, meant to provide that a person should be rendered absolutely incompetent to receive letters of administration merely by his conviction in a foreign jurisdiction of a crime *there* punishable by death or by imprisonment in a state prison. Such an interpretation would subject the qualifications of administrators here appointed to restrictions that might sometimes be oppressive and unjust. It is possible, of course, that acts which would here be deemed not simply innocent, but positively meritorious, might fall under such severe condemnation of the laws of some foreign power as to be punishable in that jurisdiction by imprisonment or death. It is necessary, therefore, in order to bring foreign convictions within the purview of the statute under consideration, to

interpret that statute as if it were couched in some such
language as this : " Letters of administration shall be granted
to no person who has been convicted of a crime *which would,
if committed in this state, be here punishable* by imprisonment
or death." Against any such interpretation, however, it can
be urged with great force that it necessitates an unwarrantable
introduction into the statute of words which form no part of
it and of an idea which its language does not fairly suggest.
If the legislature had intended to give to foreign convictions
the force and effect of convictions within the state, it would
not have been difficult to make that intention clear and
unequivocal. In the very revision of which the section now
under consideration forms a part, a careful discrimination in
this regard was made by the legislature in defining criminal
offenses and prescribing punishment therefor. Section 8,
title 7, chapter 1, part 4, Revised Statutes (3 *Banks, 7th
ed.*, 2536), declares : " *If any person convicted of any offense
punishable by imprisonment in a state prison* shall   *   *   *
subsequently be convicted of any offense   *   *   * he shall
be punished as follows," &c. That this provision was deemed
too narrow to include extra-territorial convicts is evidenced
by the contemporaneous enactment of section 10 of the same
title (3 *Banks, 7th ed.*, 2537), which declares that " every per-
son who shall have been convicted in any of the United States
or in any district or territory thereof, or in any foreign country,
of an offense which, if committed within this state, would be
punishable by the laws of this state by imprisonment in a
state prison, shall, upon conviction for any subsequent offense
committed within this state, be subject to the punishment
herein prescribed upon subsequent convictions in the same
manner and to the same extent as if such first conviction had
taken place in a court of this state."

Upon comparing section 8, above quoted, with that which
prescribes the qualifications of administrators (bearing in
mind the statutory definition of " infamous crime ") it will
appear that the two provisions are substantially identical. If,

therefore, the legislature had intended that any extra-territorial conviction should operate as a disqualification of an administrator, it is likely, it seems to me, that the provisions of the statute creating such disqualification would have been supplemented by some such enactment as section 10, above quoted. Apart, therefore, from other grounds which impel me to the same conclusion, I should for this cause alone feel disposed to hold that the mere fact of conviction for crime can never *ipso facto* incapacitate a person from becoming an administrator, unless such conviction has been had in the courts of this state.

The correctness of this conclusion is emphasized by a consideration of the second clause of the statute which is here in question. That clause provides that letters of administration shall issue to no one " incapable by law of making a contract." Manifestly this incapacity is limited to incapacity under the laws in force within this state; any other construction would be palpably absurd. By parity of reasoning, incapacity because of conviction for crime may well be regarded as limited to convictions under and by the laws of the state of New York.

The recent decision of the court of appeals, in the case of *Sims* agt. *Sims* (75 *N. Y.*, 466), subsequently approved in *National Trust Company* agt. *Gleason* (77 *N. Y.*, 400), has an important bearing upon the question here at issue, if indeed it should not be regarded as decisive of it. The determination of those cases involved the interpretation of section 23, title 7, chapter 1, part 4, Revised Statutes '(3 *Banks, 6th ed.,* 994). " No person," says that section, " *sentenced upon a conviction for felony* shall be competent to testify in any cause, matter or proceeding, civil or criminal, unless he be pardoned, &c. It was held by the court of appeals, judge RAPALLO pronouncing its opinion, that the disqualification to testify which was created by that statute was restricted in its operation to persons convicted and sentenced under the laws of the state of New York. Some of the reasons by which that conclusion is supported are not strictly applicable here, but.

there are others which have exact application, and all in all there is a very close analogy between the statute reviewed in *Sims* agt. *Sims* and the one which prescribes the qualifications of administrators.

For these reasons I feel bound to hold that Daniel O'Brien's conviction in New Jersey of the crime of larceny does not necessarily disqualify him from becoming an administrator in New York.

· 2. There remains to be considered the question whether the surrogate has discretionary power, even though the New Jersey conviction does not as of course work a disqualification, to refuse, because of such conviction, the issuance to O'Brien of letters of administration.

It has been repeatedly determined by the courts of this state that the withholding of letters from a person who, if not by some cause incapacitated, would be entitled in priority under the statute, is never justifiable save in cases where such person is declared to be disqualified by the statute itself (*Coope* agt. *Lowerre*, 1 *Barb. Ch.*; 45 ; *Emerson* agt. *Bowers*, 14 *N. Y.*, 449).

The only statutory provision which can possibly be applicable to the case at bar is that which forbids the issuance of letters to one "who shall be adjudged by the surrogate incompetent to execute the duties of his trust by reason of improvidence." This presents the question whether one's conviction of larceny can ever of itself afford satisfactory evidence of his incompetency by reasons of improvidence, a question which has been answered more than once by our appellate tribunals. In the case of *Coope* agt. *Lowerre*, above cited, the chancellor said, in reviewing a decision of a former surrogate of this county :

"No degree of legal or moral guilt or delinquency is sufficient to exclude a person from administration as next of kin in the cases of preference given·by the statute, unless such person has been actually convicted of an infamous crime." * * * (This exception, as I have already ·decided, only includes

In the Estate of Julia O'Brien, deceased.

persons convicted in this state.) "The *improvidence* which the framers of the Revised Statutes had in contemplation as a ground of exclusion is that want of care or foresight in the management of property which would be likely to render the estate and effects of the intestate unsafe, and liable to be lost or diminished in value in case administration thereof should be committed to such improvident person. The principle of exclusion in this part of the statute is based upon the well known fact that a man who is careless and improvident, or who is wanting in ordinary care and forecast in the acquisition and preservation of property for himself, cannot with safety be intrusted with the management and preservation of the property of others. *The fact that a man is dishonest, and seeks to obtain the possession of the property of others by theft, robbery or fraud, is not evidence either of his providence or of his improvidence.* The dishonest man, who preys upon the rights of others and deprives them of their property by unlawful means, may be, and frequently is, not only careless, but reckless in squandering the property which he has thus acquired. Or he may, on the other hand, preserve and hoard up his ill-gotten gains with all a miser's care."

The decision of the court of appeals in *McMahon* agt. *Harrison* (6 *N. Y.*, 443) is not in conflict with the decision just quoted. In the trial below, the surrogate had decided upon the authority of *Coope* agt. *Lowerre* (*ante*), that a professional gambler was not as such *improvident* within the meaning of the statutes declaring the qualifications of administrators. This judgment was subsequently reversed by the supreme court (*McMahon* agt. *Harrison*, 10 *Barb.*, 659). That court announced its adherence to the proposition that, under the provisions of the statute, "vices and moral delinquency cannot of themselves disqualify a person to act as administrator;" but it decided, nevertheless, that a professional gambler, whose habitual occupation it was to put large sums of money at hazard upon games of chance, was, in the nature of things, an improvident person.

This view was subsequently approved by the court of appeals (6 *N. Y.*, 443). The pursuit of gambling was pronounced as in itself a token of improvidence, but the general doctrine of *Coope* agt. *Lowerre* was unhesitatingly approved (*See, also, Emerson* agt. *Bowers*, 14 *N. Y.*, 440).

In view of these decisions I cannot, upon the evidence before me, find that O'Brien is incompetent by reason of improvidence to become administrator of this estate.

Letters may issue.