CAYUGA COUNTY.—HON. J. D. TELLER, SURROGATE.—
February, 1885.

OLIVER *v.* FRISBIE.

*In the matter of the estate of* EARL T. FRISBIE, *deceased.*

Testator, by his will, appointed his son T. and one C. its executors; bequeathed sundry legacies, which he charged upon his real property; and gave to the executors a power of sale of the latter, in order to carry

out his testamentary provisions.  C., who performed most of the executorial duties, having found an opportunity to sell, at a fair valuation, a parcel of the real property which, both before and since testator's death, had been occupied as a residence by T., the latter refused to join in the deed upon the ground that he ought to have the property himself at less than the stipulated price, at the same time stating that it was worth more than such price to an outsider.   On account of this refusal, the contract of sale was abandoned.   Upon petition, by the residuary legatees, for the revocation of T.'s letters,—

*Held,* that T. was not a testamentary trustee within the meaning of Code Civ. Pro., § 2819; that the power to sell and distribute the proceeds of the realty was so inseparably connected with the office of executor that no distinct proceeding to remove him as trustee, or donee of a power in trust, could be had; and that, while the delinquency of which he had been guilty could not be construed as improvidence, within the meaning of Code Civ. Pro., § 2685, subd. 2, it was such misconduct in the execution of his office as rendered him unfit for the due execution thereof, within the meaning of that subdivision, and that the prayer of the petition should be granted.

PETITION for the revocation of letters testamentary. The facts appear sufficiently in the opinion.

JAMES LYON, *for petitioners.*

M. V. AUSTIN, *opposed.*

THE SURROGATE.—This is an application by Henrietta Oliver and others, residuary legatees under the will of Earl T. Frisbie (proved in this court Oct. 5th, 1883), for a decree revoking the letters testamentary, issued the same day to Theodore E. Frisbie, upon the ground of improvidently managing the property and that, by reason of misconduct in the execution of his office, he is unfit for the due execution of the office of executor.

The said Theodore E. Frisbie is the son of the decedent.  He is named in the codicil to said will, with Charles H. Carpenter, the son in law of the

decedent, as such executor. Both of them qualified and received letters. Charles Frisbie, the only remaining child and residuary legatee, appeared upon the hearing and gave evidence to support the petition. The testator left personal property amounting to about $6,000; real estate in the town of Throop of the value of about $800; one piece in Auburn valued at about $2,200; and another piece, of which the value was disputed, and which is situated upon Adams street in Auburn, and consists of a house and lot whereon the said Theodore E. Frisbie has resided since the death of the testator and for about three years previously.

By the will, certain legacies are made a charge upon all the testator's real estate, and the executors are empowered and authorized to sell and convey any real estate of which the testator might die seized, without undue haste and not at a sacrifice, in order to carry out the provisions of the will.

The will directs that any advancements which the testator had made to Theodore, should be charged against him and be credited to the testator's estate in the general distribution of the residuum.

The proof shows that the decedent had advanced $500 to Theodore. Before this application was made, all the debts of the estate, amounting to about $1,100, had been paid. The Throopsville property had been sold for $800, and $550 of the proceeds paid out upon a legacy. The testator's widow has been paid the legacy of $1,500. All other legacies are unpaid.

In June, 1884, Mr. Carpenter, as executor, after

having advertised several months, found a person who desired to purchase the Adams street property, and who offered $1,300 for it. A deed was made and executed by Carpenter and presented to Theodore Frisbie, the co-executor, for his signature. Frisbie refused to sign the deed, giving, as his reason, that he thought he ought to have the property himself, and that he ought to have it for $1,000; also stating that the place was worth to an outsider more than $1,300. Upon another occasion the executor Frisbie stated, in the presence of the other legatees, that he would not sign the deed, claiming that he ought to have the place for $1,000, that his wife would not let him sign, and that the place was worth $1,500. On account of his refusal to sign the deed, the contract of sale had to be abandoned.

It appears from the evidence that $1,300 was a fair valuation of the property, and that there had been no opportunity to sell it for more money. The rental value was about $10 a month. All of the legatees were in favor of the sale except Theodore, and he was occupying the house without having given any security or made any agreement with the other executor to pay rent.

It appears in evidence that he built a barn upon the lot during his father's lifetime at an expense of $226.87, but there is evidence to show that this was accepted by the father in lieu of rent, and from the will it is clear the testator did not intend Theodore should have any farther interest in the place than that indicated in the residuary clause, and that he intended the place should be sold to meet the legacies

chargeable upon it. During his occupancy and before his father's death, Theodore paid taxes and made some necessary repairs. There seems to have been some expectation on his part that his father would give him the property, and from all the evidence it very conclusively appears that his refusal to sign a deed is based upon the hope that the other parties in interest would be prevailed upon to do in part what the testator failed to do in this behalf. It further appears that the papers have been held by Mr. Carpenter, that all the moneys have passed through his hands, and that Theodore E. Frisbie has taken but very little part in the settlement of the estate.

Under these circumstances, the question arises whether Theodore Frisbie has come under the condemnation of the statute, and should be removed as executor. The authority for such action must be found in § 2685 of the Code. The power to sell and distribute the proceeds of the real estate is so inseparably connected with the office of executor, that it would seem no distinct proceeding to remove him as trustee, or donee of a power in trust, can be had. He is not a testamentary trustee within the meaning of § 2819 of the Code. He is simply an executor with power of sale as to the realty, which is treated by the will as personal property. Under the construction given by the courts to "improvidence," it would hardly seem that the acts or delinquency charged in this case can come under that head (Emerson v. Bowers, 14 N. Y., 449).

It remains to inquire whether there has been shown such misconduct in the execution of his office as

renders this executor unfit for the due execution of his office. In the case of Quackenboss v. Southwick (41 *N. Y.*, 117), it was held that the removal of a trustee was proper where the relations between him and his co-trustee are such that they will not co-ope-rate in carrying out the trusts beneficially to those interested, and a majority of the beneficiaries ask for the removal. The statute provided that the court may remove any trustee who shall have violated his trust, or who shall be insolvent, or who, for any other cause, shall be deemed an unsuitable person to exe-cute the trust (1 R. S., p. 730, § 70). In this case, it appeared that the relations between the trustees were such that they would probably not co-operate in closing the trust beneficially to those interested in the estate. The court held this to be a cause render-ing one or the other trustee an unsuitable person, and regarded the wishes of those interested (they being *sui juris*) as to which should be removed.

In the Matter of Mechanics Bank ( 2 *Barb.*, 446), the Supreme Court held, under the same statute, that a trustee in a mortgage given by a railroad company, who refused to take possession of the mortgaged property upon default, and enforce the collection of the mortgage, on the request of the bondholders, and who, by his trust, sought to coerce the bondholders to afford assistance to the debtor by granting time, vio-lated his trust and should be removed. The court says: "If he is permitted to continue in the trust, I have no assurance that he will not extend the delay, on the same pretence for years yet to come."

The case at bar is stronger for the application of

this rule than the one last cited. In this, the executor refuses to sign the deed because he thinks he ought to have the property at a reduced price. He is attempting to coerce the parties in interest into compliance with his individual claim. He is setting up his private demands in hostility to the performance of his official duty, and it cannot be said that the alleged inadequacy of the purchase price was the ground of his refusal to sign the deed.

The judgment of an executor or trustee when relied upon by a testator is conclusive, and the opinion of the court is not to control the exercise of discretion. But that judgment must be exercised in . good faith, and not used for selfish ends.

In the case of Deraismes v. Dunham (22 *Hun*, 86), the court held that unfriendly relations between trustees, which endangered the execution of the trust and prevented harmony of action, were sufficient to justify the removal of a trustee, citing Story Eq. Jur., *Sec.* 1280. See Matter of Morgan (63 *Barb.*, 621), and Wood v. Brown (34 *N. Y.*, 337).

In the Matter of Cohn (78 *N. Y.*, 248), the question arose whether there was sufficient cause for the removal of an assignee for misconduct or incompetency. It appeared, among other things, that the assignee was counsel for a party whose interests were adverse to those of the creditors whom he represented in his trust capacity. The court held this a good ground for removal, and that the creditors were entitled to an assignee who could act impartially and without a violation of a duty which he owed to others. The court says: "The words 'misconduct' and 'in-

competency,' as used in this statute, have no technical meaning. The two were intended to embrace all the reasons for which an assignee ought to be removed. This power (of removal) could not be less than that possessed by a court of equity, and that, upon such facts as exist here, a court of equity would have power to remove a trustee cannot be doubted (2 *Perry on Trusts*, §§ 817, 818)."

We think we are justified in a similar interpretation of § 2685 of the Code, and that the facts appearing in this case show such misconduct as has rendered Theodore E. Frisbie unfit for the due execution of his office as executor. The books contain much learning upon the subject of the injustice of parties who act in a fiduciary capacity seeking to derive advantage to themselves.

Sales made by trustees for their own benefit have repeatedly been set aside, and the courts have uniformly held that transactions, in which motives of personal convenience or interest have been subserved, are thereby tainted with fraud. It would seem to follow that a refusal on the part of such person to act, upon the ground that his personal convenience or interest would be interfered with, would be misconduct under the statute in question.

Chancellor KENT, in the case of Davoue v. Fanning (2 *Johns. Ch.*, 25), says the only way for a trustee to purchase safely is by application to the court, which will divest him of his character of trustee and prevent all the consequences of his acting both for himself and for the *cestui que trust*. The suggestion is significant, and if this executor has any equities

relating to the property which he occupies, he may be in better position to obtain his rights if the prayer of the petition is granted. I think he should be removed, and findings may be prepared in accordance with the views herein expressed.