MARTIN, J., concurs.   HARDIN, P. J., concurs in the result.

---

## *In re* MOULTON'S ESTATE.

(*Supreme Court, General Term, Fourth Department.*   July 1, 1890.)

1. EXECUTORS AND ADMINISTRATORS—APPOINTMENT—CITATION.
   Since Rev. St. N. Y. pt. 2, c. 6, tit. 2, marg. p. 74, gives the widow of a decedent the first right to administer on his estate, no citation need issue on her petition for letters of administration under Code Civil Proc. § 2662, which provides that every person who has a right of administration prior to or equal to the petitioner must be cited on a petition for letters of administration.

2. SURROGATE COURTS—SPECIAL SURROGATE OF ONEIDA COUNTY—CURATIVE ACT.
   Letters of administration granted in 1886 by the special surrogate of Oneida county, without record proof of his authority to act by reason of the surrogate's incapacity, are validated by Laws N. Y. 1888, c. 455, which legalizes the official acts of the special surrogate performed by him since January, 1885, in so far as such acts may be affected by the failure to make and file a certificate showing the occurrences of the surrogate's disability.

3. EXECUTORS AND ADMINISTRATORS—REMOVAL—FRAUDULENT CONVEYANCES.
   Though Laws N. Y. 1858, c. 314, authorizes executors or administrators to maintain an action to set aside fraudulent conveyances made by a deceased person, the fact that an administratrix, in her individual right, claims the ownership of a mortgage formerly belonging to her intestate under an assignment alleged to be fraudulent as to his creditors, is no ground for the removal of the administratrix. On her refusal to bring an action to set aside the assignment, the creditors may bring the action, alleging her refusal and making her a defendant.

4. SAME—INADEQUATE BOND.
   Persons interested in an estate cannot insist on a summary removal of the administratrix because her bond is inadequate in amount, or her sureties insufficient, since Code Civil Proc. § 2598, directs that, after such inadequacy or insufficiency shall have been determined in a proceeding instituted before the surrogate, the administratrix shall be given a reasonable time, not to exceed five days, in which to procure a new bond, before her letters can be revoked.

5. SAME—FAILURE TO FILE INVENTORY.
    Since Code Civil Proc. N. Y. § 2685, subd. 3, provides for the removal of an administratrix where she has "willfully refused or without a cause neglected to obey" an order by the surrogate, and since section 2715 provides that the surrogate may by order compel her to file an inventory, her failure to file the inventory, in the absence of an order by the surrogate directing her so to do, is not a ground for removal.

Appeal from surrogate's court, Oneida county.

Petition by Miriam M. Kellogg, Sarah M. Kellogg, Julia Ann Sleeper, and Eliza Pratt, creditors and heirs at law of David Moulton, deceased, for the revocation of letters of administration theretofore granted to Emily A. Moulton, widow of the deceased. From a decree in favor of the administratrix the petitioners appeal.

In the notice of appeal the appellants state that they "intend to bring up for review, upon such appeal, the surrogate's order of reference, herein made and entered in said surrogate's office on the 22d day of December, 1886; * * * the surrogate's order herein made and entered in said surrogate's office on the 13th day of February, 1888; * * * the surrogate's decision and order denying the petitioners' motion to amend their petition in this matter." David Moulton, in his life-time a resident of the town of Floyd, in Oneida county, died on the 7th day of May, 1886, intestate. On the 18th of May, 1886, Emily A. Moulton filed her petition for her appointment as administratrix in the surrogate's office of said county; and having filed her oath of office and a bond in the penalty of $12,000, with two sureties, letters of administration were issued to her on the 20th day of May, 1886, to which letters were attached "the seal of office of our said surrogate," and, in witness of their due execution, was placed thereon the date, to-wit, the 20th day of May, and the same were signed by J. D. F. Stone, special surrogate. On the 2d day of October, in the year 1886, W. B. Bliss, surrogate, duly attached his signature to an exemplification of the letters. Appraisers were appointed, and an inventory was made and filed in the surrogate's office, September 29, 1886. On the 9th of December, 1886, the administratrix filed a new bond, with two sureties, in the penal sum of $20,000, which was on the that day approved by the surrogate, and filed in his office. On the 18th day of May, 1886, Emily A. Moulton commenced an action in the supreme court against the appellants, the heirs at law of David Moulton, deceased, for the purpose of foreclosing a mortgage which bore date the 10th day of May, 1877, and was executed by Amie H. Kellogg to Charles S. Symonds, as assignee in bankruptcy of David Moulton, and which mortgage was assigned by Charles F. Symonds, as assignee in bankruptcy, to Emily A. Moulton, by an instrument in writing, bearing date the 29th day of December, 1877, claiming to be due on said mortgage $8,650, with interest from the 10th of November, 1877. After issue joined in the action to foreclose the mortgage, the case was partly tried before a special term, when, by an order made in that action, the proceedings were suspended "to allow petitioners to take proceedings in the surrogate's court to remove said administratrix, and obtain the appointment of an administrator in her place."

On the 24th day of December, 1886, the appellants verified their petition addressed to the surrogate of Oneida county, praying for the removal of Emily A. Moulton from the office of administratrix, stating therein that she had "presented her petition to said surrogate of the county of Oneida in the usual form, praying that such proceedings be had that administration of the goods, chattels, and credits of said deceased be granted to her, and filed her bond of the same date in the sum or penalty of $12,000 only; * * * and thereupon, on the 20th day of May, 1886, letters of such administration, in the usual form, were issued and signed by J. D. L. Stone, special surrogate of said county, appointing said Emily A. Moulton administratrix of the goods, chattels, and credits of the said David Moulton, deceased;" also stating that

she had filed an inventory with the surrogate "showing assets of said estate for administration to the amount, as footed, of $8,163.61;" also stating that "said administratrix, by reason of her misconduct and dishonesty in the execution of her office as representative of decedent, is disqualified, and is unfit for the due execution of her office; * * * that she has sought to conceal, and has concealed, property and assets belonging to said estate, * * * and has neglected and has willfully refused to obey provisions of law relating to the discharge of her duties; that she has been guilty of wrong and other misconduct in the execution of her duty as administratrix in retaining possession and control of assets, and the evidence thereof, belonging to the estate of decedent, and is claiming the same as her own, which greatly embarrasses the administration, and jeopardizes the interests of your petitioners, and others interested in the distribution of said estate, viz., that the mortgage hereinafter mentioned, as your petitioners are informed and believe, is a part of and belongs to the estate of said David Moulton, and yet said administratrix refuses to have it included in the inventory of the estate, but fraudulently claims it as her own. * * *" The petition also alleges that "she has become and is incompetent or disqualified by law to act as such administratrix, * * * and the grant of said letters was obtained by false suggestions of material facts and suppression of her antagonism to the said estate." In the petition it is also alleged "that the aforesaid petition of said Emily A. Moulton represents that she was the widow of said David Moulton, whereas the petitioners claim and believe that she was never lawfully married to him, nor lived with him as his wife, but separate and apart as a single woman; and that the goods, chattels, and credits of said deceased did not exceed $6,000, whereas they were at least $20,000, including the mortgage hereinafter mentioned, as your petitioners are informed and believe to be true." It is also alleged in the petition of the appellants "that the assignment of said mortgage, and the bond accompanying it, to said Emily A. Moulton, was unlawfully, wrongfully, and fraudulently obtained, or so obtained and held in trust for the use and benefit of said David Moulton, subject to his control and disposition. * * * Said Emily A. Moulton (then Emily A. Mickle) entered into a conspiracy with said David Moulton to defraud his creditors, and to save said farms to him, and in furtherance thereof they, and those acting with them, caused to be written a certain contract or antenuptial agreement whereby it was provided that, in consideration of marrying said Moulton, he was to pay her $50,000, as follows: $10,000 within one year after marriage, and $10,000 each year thereafter, until the whole $50,000 was paid,—in lieu of all dower. Such agreement bears date the 1st day of February, 1876, but it was made in 1877, long after the said petition in bankruptcy was filed, and said adjudication was made as aforesaid, and after the pretended making of such agreement she claimed to have been married to said David Moulton, which the petitioners, on information and belief, deny, but, if she was ever married to him, such marriage, if at all, took place long after the filing of said petition in bankruptcy and the adjudication aforesaid; and the motive and intent of all such acts was to prevent the estate of said David Moulton, and particularly the real estate described in said mortgage, from passing to said assignee, he then being indebted to divers persons to the amount of about $200,000, and to save the said property to said David Moulton; and thereafter he made proof in that proceeding in bankruptcy of her pretended claim on said agreement." They also alleged that they were "each and all creditors of the said David Moulton, and of his estate." On the 30th day of December, 1886, Emily A. Moulton verified her answer to the amended petition of the appellants, in which petition she admitted some of the matters alleged in the petition of the appellants, and denied certain allegations contained therein, and alleges her ownership of the bond and mortgage, and that "at the time of the assignment thereof by said Symonds the same were held

and owned by said Symonds, as assignee in bankruptcy of Frank W. Davis, David Moulton, and Jeremiah C. Carr, in a proceeding in bankruptcy then pending in the district court of the United States for the northern district of New York; that the petitioners, Sarah M. Kellogg, Miriam M. Kellogg, Julia Ann Sleeper, and Eliza Pratt, and the undersigned, were creditors of the said David Moulton, and were parties to that proceeding; that each proved and filed a claim against the estate of said David Moulton in bankruptcy, and the same were duly adjudicated by said bankrupt court, and by the order and decree of said court were ordered to be paid, and were paid;" and she also alleged that she had filed a new bond in the sum of $20,000, "with two good and sufficient sureties, which bond * * * was duly approved by said surrogate." On the 22d of December, at a surrogate's court, after hearing the parties, an order was made by the surrogate, appointing "Frederick G. Fincke, Esq., referee, to take and report to the surrogate the evidence upon the facts as to the alleged grounds for revoking said letters of administration, with his opinion thereon; * * * and said referee bring in his report before the surrogate with all convenient speed, and the hearing of the parties herein on the confirmation of the report of the referee, and the decree to be made herein, be brought on upon a notice of eight days." After the referee had taken great volume of testimony at the instance of the respective parties, he made his report on the 31st of December, 1887, and in his third conclusion of law said, viz.: "That Emily A. Moulton was duly and legally appointed administratrix of the estate of David Moulton, deceased, and was lawfully entitled to such appointment, which was not obtained by her by reason of any concealment of fact, and by reason of any 'false suggestion of a material fact,' and that she has faithfully discharged her duties as administratrix, and has not been guilty of misconduct in the execution of her office as such administratrix, and that the letters of administration written to her should not be revoked; and that the petitioners are not entitled to the relief asked for in their petition, and are not entitled to the removal of said Emily A. Moulton from her position as administratrix, and that said Emily A. Moulton should be allowed to continue the discharge of the trust and duties of administratrix, and settle up said estate, and that the petitioners herein should be dismissed." On the 11th of January, 1888, the petitioners prepared and served about a hundred exceptions to the referee's report, and on the 13th day of February, 1888, in the surrogate's court, the petitioners asked leave to give evidence of the debts and claims against the estate of David Moulton, and the amounts and numbers of each of the debts and claims, to which the respondent objected; and thereupon the surrogate ordered the matter "sent back to F. G. Fincke, Esq., the referee herein, to take and report to the surrogate the evidence which the petitioners may offer on the question of fact of the debts and claims against said estate," and on the 6th day of March, 1888, the referee made an additional or supplemental report, in which report, among other things, he stated that the assets of the estate amount to the sum of $8,153, and that he had before him "no facts upon which to form an opinion as to the solvency of the estate;" although in his report he stated that the total amount of claims admitted and disputed is the sum of $8,680.75. On the 12th of March, 1888, the petitioners filed exceptions to the supplemental report.

At a surrogate's court on the 14th day of May, 1888, an order was made reciting the proceedings already had, and: "(1) That the report of the said Frederick G. Fincke, the referee herein, and the questions of fact and the conclusions of law as herein found and determined by him, be, and the same are hereby, in all things ratified and confirmed, and are to stand as the order and determination of this court. (2) That the petition of the said petitioners Miriam M. Kellogg, Sarah M. Kellogg, Julia Ann Sleeper, and Eliza Pratt is hereby dismissed. (3) The costs, charges, and expenses, incurred by the said

Emily A. Moulton in her defense to this proceeding, be charged against and be paid from the estate of the said David Moulton, deceased." On the 27th of June exceptions were filed to the decree of the surrogate, and the appellants subsequently presented requests to find 75 matters of fact and 28 matters of law. Interspersed with the requests are the words, "I so find;" "I refuse to find except as found by me in my finding;" "Petitioners except;" "I refuse to find;" which expressions are printed in italics, although they nowhere appear to have any signature of the surrogate. In the case presented, it is stated: "The surrogate made the same rulings and decisions as made by the referee to same, and to each thereof, and gave to the petitioners and respondent an exception to each of his rulings and decisions against the petitioners and respondent, and the petitioners and respondent duly excepted. The said surrogate has marked on the margin of said requests to find, etc., as appears thereon, and the petitioners have duly taken exceptions to each of such refusals to find or rule. After this matter and proceeding were so heard, tried, and submitted to the surrogate for decision and decree, at a surrogate's court held in and for the county of Oneida, at the surrogate's office in Rome, on the 14th day of May, 1888, the said surrogate made and entered a decree, as annexed hereto. But the said surrogate did not file, nor has he filed, in his office, his decision in writing, which states separately the facts found and the conclusions of law, except as stated in the decree herein, to which omission or refusal the petitioners duly excepted." On or about the 25th day of June, 1888, the respondent's attorney served a copy of said decree, and on the 27th day of June, 1888, the petitioners duly made, filed, and served exceptions to said decree, and each part thereof, as hereinbefore appears. The case then contains 32 requests to find, and, interlined or printed in opposite the requests, are the words, "I so find. W. B. B.," or, "I decline to so find," or, "Findings with certain qualifications,"—with the initials of the surrogate added; and following are 25 requests to find certain conclusions of law, with interlineations, with words, "I refuse to find. W. B. B.;" or words, "I so find;" and following each of the expressions of refusal are the words, "Petitioners except." And on the 22d of August, 1888, it appears there were filed with the surrogate certain formal exceptions to the refusal of the surrogate to find.

Code Civil Proc. N. Y. § 2662, provides: "Every person being a resident of the state, who has a right to administration, prior or equal to that of the petitioner, and who has not renounced, must be cited upon a petition for letters of administration." Section 2715 provides: "A creditor, or person interested in the estate, may present to the surrogate's court proof, by affidavit, that an executor or administrator has failed to return an inventory or a sufficient inventory, within the time prescribed by law therefor. Thereupon, if the surrogate is satisfied that the executor or administrator is in default, he must make an order, requiring the delinquent to make the inventory, or a further inventory."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*E. J. Richardson*, for appellants. *C. M. & G. E. Dennison*, for respondent.

HARDIN, P. J. 1. Section 2545 of the Code of Civil Procedure provides that "the surrogate must file in his office his decision in writing, which must state separately the facts found and the conclusions of law." If the parties to the proceeding now before us had followed the requirements of this section, by presenting to this court a "decision in writing," which stated separately the facts found and the conclusions of law, the practice would have been much more satisfactory than that which now appears in the appeal-book before us; and it would have been in keeping with our decision in *Otis* v. *Hall*, 6 N. Y. St. Rep. 592, and also our decision in *Re Keef*, 43 Hun, 98. In the latter case it was said in the opinion delivered in this court, viz.: "Unless

some authority can be found to the contrary, we thin, the safer practice would be for the surrogate to make an independent decision, with findings of fact and law, accepting or rejecting the conclusions of the referee, as shall seem just. Exceptions can be filed to such findings and to subsequent refusals to find or findings in settlement of case, as provided in section 2545."

2. It appears by the evidence, as well as by the admission made upon the hearing, that there was an intermarriage of the respondent with the deceased. The position of the appellants, to support which they gave considerable evidence, is that the marriage took place in the spring of 1877. The position of the respondent is, to which she gave considerable evidence in support thereof, that the marriage took place in the spring of 1876. Being the widow of the deceased, she was per force of the statute[1] entitled to administer upon his estate, having the prior right to letters of administration. *In re Page*, 107 N. Y. 266, 14 N. E. Rep. 193; *Libbey* v. *Mason*, 112 N. Y. 525, 20 N. E. Rep. 355. Having a right to administration, no notice or citation was necessary. Code Civil Proc. §§ 2660-2662.

3. Whatever force there may have been in the objection made to the appointment of the respondent as administratrix, and the issuing of letters of administration to her by the special surrogate of the county of Oneida, without record proof of his authority to act (by reason of sickness, absence, or disability of the surrogate) when the objection was taken in the petition filed in 1886, we think the force thereof has been wholly removed by chapter 455 of the Laws of 1888, which provided in that chapter that "the official acts of John D. F. Stone, as special surrogate,  *  *  *  since the 1st day of January, 1885, while acting in the place of the surrogate of said county by reason of the sickness, absence, or lunacy of said surrogate, so far as such acts may be affected, impaired, or questioned, by reason of the failure of the making and filing of a certificate showing the occurrence of such disabilities, as required by law, are hereby legalized, ratified, and confirmed, and the same shall have all the force and effect and validity as if such certificate had been made and filed." It may be observed incidentally that the surrogate seems to have approved of the action of the special surrogate very soon thereafter. Surely, such was apparent from the action of the surrogate in filing the inventory, and in approving and filing a bond executed by the administratrix. Whatever irregularity there may have been, we think was cured before the making of the order brought before us on this appeal.

4. Sections 2684, 2685, 2686, and 2687 of the Code of Civil Procedure confer upon the surrogate's court power and prescribe the practice and mode of procedure for the removal of an administrator or revocation of letters of administration issued to such administrator. Section 2685 provides that "a written petition, duly verified, praying for a decree revoking those letters, and that the executor or administrator may be cited to show cause why a decree should not be made accordingly: (1) Where the executor or administrator was, when letters were issued to him, or has since become, incompetent or disqualified by law to act as such, and the grounds of the objection did not exist, or the objection was not taken by the petitioner, or a person whom he represents, upon the hearing of the application for letters; (2) where, by reason of his having wasted or improperly applied the money or other assets in his hands, or invested money in securities unauthorized by law, or otherwise improvidently managed or injured the property committed to his charge, or by reason of other misconduct in the execution of his office, or dishonesty, drunkenness, improvidence, or want of understanding, he is unfit for the due execution of his office; (3) where he has willfully refused, or without good cause neglected, to obey any lawful direction of the surrogate contained in a decree or order, or any provision of law relating to the discharge of his

[1] Rev. St. N. Y. pt. 2, c. 6, tit. 2, art. 2, § 27, marg. p. 74.

duty; (4) where the grant of his letters was obtained by a false suggestion of a material fact." Section 2686 provides that "a petition, presented as prescribed in the last section, must set forth the facts and circumstances showing that the case is one of those therein specified. Upon proof, by affidavit or oral testimony, satisfactory to the surrogate, of the truth of the allegations contained in the petition, a citation must be issued according to the prayer thereof." It is further provided in section 2687: "Upon the return of a citation, issued as prescribed in the last section, if the objections, or any of them, are established to the surrogate's satisfaction, he must make a decree, revoking the letters issued to the person complained of. But the surrogate may, in his discretion, dismiss the proceedings, upon such terms, as to costs, as justice requires, and may allow the letters to remain unrevoked, in either of the following cases: (1) Where the case is within subdivision third of the last section but one; (2) where the case is within subdivision fourth of that section, if the person cited is entitled to letters, notwithstanding the false suggestion." We think questions arising under these sections are largely "in the discretion of the surrogate." In considering certain powers of the surrogate, in *McGregor* v. *Buel*, 24 N. Y. 169, not wholly dissimilar to the questions which may arise under the sections of the Code to which we have just referred, it was said by DENIO, J.: "The determination of the surrogate upon such questions is, as it should be, summary and exclusive." We think the provisions of section 2687, to-wit, "if the objections, or any of them, are established to the surrogate's satisfaction, he must make a decree revoking the letters issued to the person complained of," were intended to confer upon the surrogate a judicial discretion in viewing the facts and circumstances disclosed by the evidence furnished to sustain the objections made. See *In re West*, 40 Hun, 296; affirmed 111 N. Y. 687, 19 N. E. Rep. 286.

We think that the evidence and proceedings submitted to the surrogate fail to establish that the administratrix was "incompetent or disqualified by law to act as such." It was provided in the Revised Statutes (volume 2, p. 75) that no letters of administration should be granted "to any person who shall be judged incompetent by the surrogate to execute the duties of such trust, by reason of drunkenness, improvidence, or want of understanding. * * *" In expounding that provision of the statute, the chancellor said, in *Coope* v. *Lowerre*, 1 Barb. Ch. 47, viz.: "No degree of legal or moral guilt or delinquency, therefore, is sufficient to exclude a person from the administration, as the next of kin, in the cases of preference given by the statute, unless such person has been actually convicted of an infamous crime. * * * The improvidence which the framers of the Revised Statutes had in contemplation, as a ground of exclusion, is that want of care or foresight in the management of property which would be likely to render the estate and effects of the intestate unsafe, and liable to be lost or diminished in value by improvidence, in case administration thereof should be committed to such improvident person. * * * The evidence in this case tending to show the respondent's dishonesty, and that he had been guilty of divers offenses against the laws of society, but which could not throw any light upon the question of his providence or improvidence, should therefore have been excluded by the surrogate." In *McMahon* v. *Harrison*, 10 Barb. 659, it was held, viz.: "Under the provisions of the Revised Statutes respecting the granting of letters of administration in cases of intestacy, vice and moral delinquency will not of themselves disqualify a person to act as administrator." In *Emerson* v. *Bowers*, 14 N. Y. 452, the question considered by the court was whether the appellant there was legally incompetent to serve, and it was said that the fact that a person is "of small pecuniary means, and that he has been guilty of misconduct or mismanagement in administering the trust-estate, do not authorize the surrogate to supersede the letters testamentary, under 2 Rev. St. p. 72, §§ 18–21, and Id. p. 69, § 3, on the ground that the executor is legally

incompetent to serve 'by reason of improvidence;'" and it was also further held: "The term 'improvidence' refers to such habits of mind and conduct as render a man generally, and under all ordinary circumstances, unfit to serve;" and, in delivering the opinion in that case, COMSTOCK, J., referred to *Coope* v. *Lowerre, supra,* approvingly; and the same case was approved in *McMahon* v. *Harrison,* 6 N. Y. 447; and the case was also approved in *Coggshall* v. *Green,* 9 Hun, 472; and in the course of the opinion delivered by TALCOTT, J., it was said, viz.: "Moral guilt or delinquency is not a ground for excluding a person from receiving letters unless he has been convicted of an infamous crime."

The learned counsel for the appellants, in a very exhaustive argument submitted to us, lays great stress upon the circumstances attending the transfer of a mortgage for $8,650 by Symonds, as assignee, to the plaintiff, and to the fact that she had commenced an action to foreclose that mortgage, and had omitted to place the same upon the inventory filed, and seems to suppose that her removal from the office of administration was essential in order to enable the appellants, as heirs at law, or as creditors of the deceased, to contest the title of the plaintiff to the mortgage, and to enable them to assert that the mortgage in fact was an asset belonging to the estate of the deceased; and he calls our attention to the Laws of 1858, c. 314, which authorizes executors or administrators to maintain an action to set aside fraudulent conveyances, transfers, or assignments made by the deceased. It must be borne in mind that the object of that statute is to enable creditors summarily to reach assets that have been fraudulently disposed of by the intestate; however, we see no difficulty, under the provisions of that statute, in the creditors availing themselves of all its provisions in this case, even though the respondent remained as the administratrix. Surely, upon creditors applying to the administratrix to bring such an action as the Laws of 1858 authorizes, she would be called upon to yield to the request, or to make a refusal. If she refused, then the creditors could bring an action and make her a defendant in her representative as well as her individual capacity, and allege her refusal to bring the action, and thus the creditors would have the full benefit of the provisions of the statute to the same extent as though the action had been brought by the administratrix. In *Bate* v. *Graham,* 11 N. Y. 237, it was held that if the administrator "collude with the fraudulent vendee, or, after reasonable request, refuse to take proceedings to impeach his title and reach the property in his hands, a creditor may maintain an action against him and the executor or administrator for that purpose." That case was decided in 1854, and was referred to approvingly in *Bank* v. *Leggett,* 51 N. Y. 554. In *Phelps* v. *Platt,* 50 Barb. 430, it was said: "Ordinarily a creditor of the estate of a deceased person cannot maintain an action against a fraudulent vendee of the latter to impeach the sale of personal property, unless the executor or administrator should collude with the fraudulent vendee, or, after reasonable request, refuse to take proceedings to impeach the title and reach the property in his hands." We are of the opinion that the removal of the respondent from the office of administratrix was not necessary to enable the appellants, as creditors, to maintain proper action to avoid the alleged ownership by the plaintiff of the mortgage on the ground that it was the property of the deceased, and that the transfer thereof to the plaintiff was fraudulent. In *Re Kellogg,* 39 Hun, 284, it was said by LANDON, J.: "This executor, being the donee of the gift, did not disaffirm it. His interest was opposed to his duty. But he ought to have disaffirmed it, and, because he voluntarily failed in duty, the surrogate has power to compel his performance of it. The statute authorizes the surrogate to control executors. 2 Rev. St. p. 220, § 1. In such case the general creditor can invoke this remedy. The statute dispenses with judgment and execution. *Southard* v. *Benner,* 72 N. Y. 424." We see nothing in that case inconsistent with the views we have already ex-

pressed. In *Lichtenberg* v. *Herdtfelder*, 103 N. Y. 307, 8 N. E. Rep. 526, it was said: "The fact that the fraudulent grantee is one of the executors furnishes no insurmountable obstacle. If she should refuse to restore the lands to the estate, she should be removed from her office of executrix, and then the remaining two executors could, under the act of 1858, disaffirm the conveyances of the real estate, and bring an action to set them aside; or the two executors could commence the action, making the executrix a defendant, and in such an action obtain for the estate the relief demanded. If the two defendants refused to commence the action upon the application of the creditors or some of them, they could be compelled to commence it by an order of the surrogate, who has ample power to that end, under section 2481 of the Code."

In *Harvey* v. *McDonnell*, 113 N. Y. 530, 21 N. E. Rep. 695, it was said: "But the administrators do not avail themselves of the power given to them by statute. It was their right and duty to do so. They have been applied to, and refuse. Is the creditor, therefore, without a remedy? Clearly not. Upon the face of the complaint, it is apparent that the administratrix has an interest adverse to the creditors of the estate. They call for property which she claims to own in her own right, and which she refuses to apply upon the debts of her intestate. These circumstances require an exception to be made to the general rule which forbids an estate or its management to be taken from the hands of those lawfully intrusted with it; for it is equally well settled that where such parties are either in collusion with one holding the property alleged to have been fraudulently transferred, or where, as in this case, it is actually claimed by them, or the trustee unreasonably refuses to sue, the creditors, or other persons interested, may themselves bring an action for or reclaim the property fraudently transferred, making the transferees and the trustee parties. 1 Story, Eq. Jur. § 423; *Dewey* v. *Moyer*, 72 N. Y. 70; *Bate* v. *Graham*, 11 N. Y. 237; *In re Cornell*, 110 N. Y. 351, 18 N. E. Rep. 142; *Bank* v. *Leggett*, 51 N. Y. 552. In such a case the creditor stands in the place of the trustee, and it is immaterial that he is not a judgment creditor." In *Lore* v. *Dierkes*, 51 N. Y. Super. Ct. 157, it was said: "Although the instrument may be fraudulent as to creditors, the next of kin or their representative cannot avoid it. The representative of the next of kin, or rather the administrator, avoids it in behalf of creditors. Such an avoidance cannot result in favor of those for whom it cannot be avoided, but against whom it is vested." If the bond and mortgage which were assigned by Symonds to the plaintiff were the property of Moulton at that time, it may be said upon the assumption that he consented to the assignment, as the evidence seems to indicate he did; that he, if living, could not be heard to question the respondent's ownership to the same. In *Phillips* v. *Wooster*, 36 N. Y. 414, it was said: "So that, if the money paid was the debtor's, as he now insists it was, and the conveyance to the wife, therefore, fraudulent as against creditors, it was not fraudulent as against him, for he was not only consenting to the act, but himself performed it." In *Renfrew* v. *McDonald*, 11 Hun, 258, in speaking for this court, TALCOTT, J., said: "The recipient of property with intent to defraud creditors possesses the intimacy and confidence of the fraudulent debtor, and advises the attempted fraud, and consents to be made the instrument thereof. To allow the grantor in such a case to set aside the grant, and be restored to all he parted with for the illegal purpose, would be to afford great encouragement to future attempts of that character."

5. If the bond given by the administratrix upon her appointment, or the new bond given by her for $20,000, was irregular or "inadequate in amount," or the sureties therein were insufficient, a remedy is provided therefor in section 2597, Code Civil Proc. Persons interested in the estate under such circumstances may present a petition to the surrogate stating the insufficiency of the sureties, "or that the bond is inadequate in amount;" "praying that

the principal in the bond may be required to give a new bond, in a larger penalty, or new or additional sureties, as the case requires; or, in default thereof, that he may be removed from his office, and that letters issued to him may be revoked;" and it is further provided that, when the bond is given by an administrator, "the petition may also be presented by any creditor of the decedent." Thereupon, if it appears to the surrogate that there is reason to believe that the allegations of the petition are true, he must cite the administrator to show cause why the prayer of the petition should not be granted. Section 2598, Id., provides for the surrogate's hearing the allegations and proofs of the parties, and that, if he finds that any of the objections are valid, "he must make an order, requiring the principal in the bond to give new or additional sureties, or a new bond in a larger penalty, as the case requires, within such a reasonable time, not exceeding five days, as the surrogate fixes, and directing that, in default thereof, his letters be revoked." We think these sections provide ample remedy in a case where the surety "is insufficient," or where the bond is "inadequate in amount." Although the appellants claim that the bond was defective in that it was inadequate in amount, and that the sureties were insufficient, and that one of the sureties was incompetent, they did not seek the remedy prescribed by the sections just alluded to. Having omitted to seek the remedy prescribed by the sections, we think they were not in a situation to insist, for either of the causes mentioned, on a removal of the administratrix under section 2685, Id.

6. If the administratrix "failed to return an inventory, or a sufficient inventory, the appellants had a remedy therefor under section 2715, Id. If an order under that section had been obtained, and the administratrix had "willfully refused or without a cause neglected to obey" it, such refusal would have furnished ground for her removal, under subdivision 3, § 2685, Id.

7. Appellants have taken multitudinous exceptions, which are found distributed throughout the case presented to us, to rulings of the referee in receiving and in rejecting evidence; to the rulings of the surrogate in receiving or rejecting evidence; the conclusions of fact found by the surrogate; to refusal of surrogate to find certain facts; to refusals of the surrogate to find certain conclusions of law; and to his findings upon certain questions of law. Fortunately, we need not protract this opinion to the extraordinary length that would be required to discuss each of these exceptions in detail. We have carefully looked at all of them, and we are of the opinion that no errors were committed in receiving or rejecting evidence which make it apparent to this court "that the exceptant was necessarily prejudiced thereby." Id. § 2545; *Brick* v. *Brick,* 66 N. Y. 144; *Horn* v. *Pullman,* 72 N. Y. 269; *In re Ross,* 87 N. Y. 514; *Snyder* v. *Sherman,* 88 N. Y. 656.

This court having the power to decide questions of fact which were before the surrogate, as we held in *Re McGraw,* 45 Hun, 354, affirmed 111 N. Y. 66, 19 N. E. Rep. 233, in the exercise of that power we are of the opinion that the surrogate in the discharge of his official duty, and in applying his judicial discretion to the case before him, having regard to all the aspects thereof, properly reached the conclusion evidenced by his order refusing to remove the respondent from the office of administratrix of the goods and chattels of David Moulton, her deceased husband. We are of the opinion that the several orders brought up by the appeal of the appellants should be sustained. Decree of the surrogate of Oneida county refusing to revoke letters of administration to Emily A. Moulton, and intermediate orders, affirmed, with costs against the appellants personally. See *In re West,* 40 Hun, 297. All concur.